UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
:
DANIEL AUDE, Individually and On Behalf : 
of All Others Similarly Situated, :
:
                               Plaintiff, :     17-CV-10085 (VSB)
:
             - against - :     **OPINION & ORDER**
:
:
KOBE STEEL, LTD., HIROYA KAWASAKI :
YOSHINORI ONOE, AKIRA KANEKO, :
AND NAOTO UMEHARA, :
:
                             Defendants. :
:
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/4/2018

Appearances:

Robert C. Finkel
Wolf Popper LLP
New York, New York
*Counsel for Plaintiff and Movant Daniel Aude*

Douglas H. Flaum
Kevin P. Broughel
Paul Hastings LLP
New York, New York
*Counsel for Defendant Kobe Steel, Ltd.*

VERNON S. BRODERICK, United States District Judge:

      Before me is the unopposed motion of Plaintiff Daniel Aude, pursuant to Section 21D(a)(3) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u–4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for and order (1) appointing Aude as Lead Plaintiff on behalf of a putative class of all persons or entities who purchased or otherwise acquired American Depositary Receipts ("ADRs") of Defendant Kobe Steel, Ltd. ("Kobe Steel") in the U.S. market between May 29, 2013 and

October 12, 2017 (the "Class Period"), and (2) approving the selection of Wolf Popper LLP ("Wolf Popper") as Lead Counsel for the putative class. Because Aude's motion is unopposed, and he meets all requirements set out by the PSLRA, Aude's motion requesting appointment as Lead Plaintiff and approval of Wolf Popper as Lead Counsel is GRANTED.

## I. Background and Procedural History[1]

Kobe Steel is one of Japan's largest steel manufacturers and a major supplier of aluminum and copper products. (Compl. ¶ 2.)[2] On May 29, 2013, at the beginning of the Class Period, Kobe Steel launched a new business plan that purported to reduce, among other things, "quality error costs." (*Id.* ¶ 37.) During the Class Period, Kobe Steel continually made statements emphasizing its compliance with corporate laws and rules, its focus on maintaining a culture of high ethical standards and corporate governance, and its commitment to product safety. (*See, e.g.*, *id.* ¶ 72.)

Beginning on October 8, 2017, the public became aware of information regarding Kobe Steel's products and safety practices that caused its ADR price to tumble, including that: (i) certain Kobe Steel products did not comply with product specifications and data in inspection certificates had been improperly written, (*id.* ¶¶ 6, 80); (ii) Kobe Steel had fabricated data on components used in a variety of products that were used by major manufacturers, (*id.* ¶¶ 8, 82); (iii) the data fabrication scandal extended to Kobe Steel's core business of selling steel to numerous international companies, (*id.* ¶ 10); and (iv) there was an investigation into Kobe Steel's wrongdoing and that the number of impacted customers exceeded 400, (*id.* ¶¶ 11, 87–88). The price of Kobe Steel ADRs fell from $5.92 on October 8, 2017 to $3.55 on October 13, 2017,

---

[1] The facts in Section I are taken from the complaint and are recited for background only. My citation to these facts are not intended to and should not be viewed as findings of fact.

[2] "Compl." refers to the Complaint, filed by Plaintiff on December 26, 2017. (Doc. 1.)

2

resulting in significant losses for investors, including Aude. (*Id.* ¶¶ 7, 12, 14.) On December 26, 2017, Plaintiff commenced the instant action by filing a complaint against Kobe Steel alleging that Kobe Steel's statements during the Class Period were materially false and misleading because Kobe Steel had falsified data on many of its products and sold products that failed quality control tests. (*Id.* ¶ 5.)

On the same day that Plaintiff filed his Complaint, counsel for Plaintiff published a notice in Global Newswire announcing the initiation of this securities class action (the "Notice"). (Finkel Decl. Ex. A.)[3] The Notice informed shareholders that if they had purchased or acquired Kobe Steel ADRs during the Class Period, they would have until February 26, 2018 to file a motion to be appointed lead plaintiff. (*Id.*) On February 26, 2018, the date specified on the Notice, Aude file his motion requesting appointment of Lead Plaintiff and Lead Counsel, (Doc. 5), with a supporting memorandum and declaration, (Docs. 6–7). Aude filed a response in further support of his motion on March 12, 2018. (Doc. 8.) No other member of the putative class filed a motion to be appointed lead plaintiff.

## II. Discussion

### A. *Appointment of Lead Plaintiff*

The procedures set forth in the PSLRA, 15 U.S.C. § 78u–4, govern the appointment of lead plaintiff in securities class actions. The PSLRA was enacted with the goal of "prevent[ing] lawyer-driven litigation" and "ensur[ing] that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *Peters v. Jinkosolar*

---

[3] "Finkel Decl." refers to the Declaration of Robert C. Finkel in Support of Motion of Daniel Aude for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, filed on February 26, 2018. (Doc. 7.)

*Holding Co.*, No. 11 Civ. 7133(JPO), 2012 WL 946875, at *4 (S.D.N.Y. Mar. 19, 2012) (quoting *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001)); *see also In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43–44 (S.D.N.Y. 1998); H.R. Conf. Rep. No. 104–369. Before its enactment, "professional plaintiffs" overwhelmingly and disproportionately profited, "irrespective of the culpability of the defendants" and "at the expense of shareholders with larger stakes." *Schulman v. Lumenis, Ltd.*, No. 02 Civ.1989(DAB), 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (quoting *In re Party City Sec. Litig.*, 189 F.R.D. 91, 103 (D.N.J. 1999)).

Consistent with this intent, under the PSLRA, courts are to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). There is a rebuttable presumption that the adequate plaintiff is the person or group of persons that (1) filed the original complaint or filed a motion in response to the notice, (2) has the largest financial interest in the relief being requested, and (3) meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See id.* § 78u–4(a)(3)(B)(iii)(I). Other class members may rebut this presumption by providing evidence that the presumptively adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u–4(a)(3)(B)(iii)(II).

Here, because Aude filed a timely motion, has the largest financial interest, and otherwise meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, as further detailed below, I appoint him as Lead Plaintiff.

### 1. Timeliness

As an initial matter, the PSLRA requires that the named plaintiff in the first-filed action publish a notice of the pendency of the action in a "widely circulated national business-oriented publication or wire service" within twenty days from the date that the complaint is filed. *Id.* § 78u–4(a)(3)(A)(i). The notice must inform the purported plaintiff class of the pendency of the action, the claims asserted in the complaint, the purported class period, and the ability to move, within sixty days of the notice, to serve as lead plaintiff of the purported class. *Id.* Courts strictly adhere to the sixty-day rule, and any motion filed after the sixty-day period will not be considered except under rare circumstances. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 534 (S.D.N.Y. 2015) (calling the 60-day deadline a "strict deadline"); *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 397 (S.D.N.Y. 2014) ("Courts within and outside of this District typically adhere strictly to the requirement that movants file their lead plaintiff motions within sixty days of the date when notice is published.").

Plaintiff's counsel published the Notice on December 26, 2017, (Finkel Decl. Ex. A), the same day that Plaintiff filed his Complaint in this Court, (Doc. 1), satisfying the twenty-day requirement set forth in 15 U.S.C. § 78u–4(a)(3)(A)(i). Further, Plaintiff filed his motion on February 26, 2018, (Doc. 5), satisfying the requirement that such motion be filed within sixty days of publication of notice of pendency of the action, 15 U.S.C. § 78u–4(a)(3)(A)(i)(II). As mentioned, no other member of the putative plaintiff class filed a motion to be appointed lead plaintiff. Thus, Plaintiff timely filed his motion under the PSLRA.

### 2. Largest Financial Interest

The PSLRA does not specify a method by which to determine which plaintiff has the "largest financial interest." *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008).

5

In fact, neither the Supreme Court nor the Second Circuit has explicitly provided a test. *See id.* Thus, courts in this District use the four-factor test first adopted in *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997), when making a determination as to what party has the largest financial interest. Those factors include: (1) total number of shares purchased during the class period; (2) net shares purchased during the class period; (3) net funds expended during the class period; and (4) approximate financial losses suffered. *See, e.g.*, *Reitan*, 68 F. Supp. 3d at 395 (applying the *Lax* test); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394–95 (S.D.N.Y. 2008) (same); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100–01 (S.D.N.Y. 2005) (same); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004) (same).

Aude is the only member of the putative class to have filed a complaint or to move for appointment as lead plaintiff. During the Class Period, Aude (1) purchased 1,300 ADRs of Kobe Steel; (2) purchased 1,200 net ADRs of Kobe Steel; (3) spent $5,879 in net funds; and (4) suffered a resulting loss of $494. (Finkel Decl. Ex. C.) As such, he has the largest financial interest of any class member seeking appointment as lead plaintiff.

### 3. Rule 23

The last requirement is that the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc). Rule 23 states:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Rule 23 analysis in the context of appointment of lead plaintiff "need

6

not be as complete as would a similar determination for the purpose of class certification." *eSpeed*, 232 F.R.D. at 102. The parties moving for lead plaintiff are only required to make a prima facie showing that they meet Rule 23, and courts need only consider the typicality and adequacy requirements. *See Varghese*, 589 F. Supp. 2d at 397; *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).

With respect to typicality, courts consider whether the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (quoting *In re Crayfish Co. Sec. Litig.*, No. 00 Civ.6766IDAB), 2002 WL 1268013, at *5 (S.D.N.Y. June 6, 2002)); *see also Oxford Health Plans*, 182 F.R.D. at 50. While the claim need not be identical, it must be substantially similar to the other members' claims. *See Canson v. WebMD Health Corp.*, No. 11 Civ. 5382(JFK), 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011).

The adequacy requirement is satisfied where the proposed lead plaintiff "adequately protect[s] the interests of the class." Fed. R. Civ. P. 23(a)(4). The presumptive lead plaintiff meets this requirement when he or she: (1) has no conflict of interest with the other members of the class, (2) has sufficient interest in the outcome of the case, and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question. *See Reitan*, 68 F. Supp. 3d at 400.

Aude meets both the typicality and adequacy requirements of Rule 23. Aude "alleges, as do all class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Kobe Steel, or omitted to state material facts necessary to make the statements they did make not

7

misleading." (Aude Mem. 7.)[4]  Aude claims he purchased Kobe Steel ADRs during the Class Period and was harmed by Kobe Steel's misrepresentations or omissions. (*Id.*)  I am satisfied that Aude's claims and legal arguments are similar to those of other investors who allegedly suffered, and are thus representative of the putative class.  Accordingly, I find that Aude has made a showing sufficient for typicality at this stage of the proceedings.

Aude has also demonstrated that he meets the adequacy requirement at this stage of the litigation.  Aude has retained well-qualified and experienced counsel, his degree of losses suggests he will have a sufficient interest in advocating on behalf of the putative class members, and there is no reason to believe that his claims would be subject to any unique defenses.

Because I find that Aude satisfies the typicality and adequacy requirements and no party has rebutted this status, Aude is appointed Lead Plaintiff in the instant action.

### B. *Appointment of Lead Counsel*

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u–4(a)(3)(B)(v).  There is a "strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015) (internal quotation marks omitted).

Here, Aude has selected Wolf Popper as class counsel, and moves for approval of its selection.  (Aude Mem. 8.)  Having reviewed Aude's Memorandum of Law, as well as the Finkel Declaration and the firm resume attached as Exhibit D to the Finkel Declaration, I find that Wolf Popper is well qualified to serve as lead counsel in the instant case.  The attorneys at Wolf

---

[4] "Aude Mem." refers to the Memorandum of Law in Support of the Motion of Daniel Aude for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, filed on February 26, 2018. (Doc. 6.)

Popper have had substantial experience with securities litigations as well as securities fraud class actions. (*See* Aude Mem. 8; Finkel Decl. Ex. D, at 1–8.) Therefore, I approve Aude's selection and appoint Wolf Popper as Lead Counsel.

### III. Conclusion

Because I find that Aude satisfies the requirements of the PSLRA, including the typicality and adequacy requirements of Rule 23, Aude's motion for appointment as Lead Plaintiff and for approval of his selection of Lead Counsel is GRANTED. The Clerk of Court is respectfully requested to terminate the pending motion. (Doc. 5.)

SO ORDERED.

Dated: April 4, 2018
      New York, New York

_Vernon Broderick_
Vernon S. Broderick
United States District Judge