# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DANIEL AUDE, Individually and on Behalf of All
Others Similarly Situated

        Plaintiff,

        vs.

KOBE STEEL, LTD., HIROYA KAWASAKI,
YOSHINORI ONOE, AKIRA KANEKO, and
NAOTO UMEHARA,

        Defendants.

CASE NO.: 1:17-cv-10085-VSB

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation") dated September 21, 2018 is submitted to the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to the approval of the Court, this Stipulation is entered into among Lead Plaintiff Daniel Aude, on behalf of himself and the members of the Settlement Class, and Kobe Steel, Ltd. ("Kobe Steel", the "Company", or the "Settling Defendant") (together, Kobe Steel and Lead Plaintiff are the "Settling Parties"), by and through their respective counsel.

1.    WHEREAS, on December 26, 2017, Daniel Aude filed a federal securities class action complaint ("Complaint") [Dkt. No. 1] in the United States District Court for the Southern District of New York, styled *Aude v. Kobe Steel, Ltd.*, Case No. 1:17-cv-10085-VSB (the "Action" or the "Litigation");

2.     WHEREAS, by Opinion and Order dated April 4, 2018 [Dkt. No. 11], the Honorable Vernon S. Broderick appointed Daniel Aude as Lead Plaintiff on behalf of a putative class of all persons or entities who purchased or otherwise acquired American Depository Receipts ("ADRs") of Kobe Steel on the open market in the United States between May 29, 2013 and October 12, 2017; and approved Daniel Aude's selection of Wolf Popper LLP as Lead Plaintiff's Counsel for the putative class;

3.     WHEREAS, Lead Plaintiff and Lead Plaintiff's Counsel, prior to and continuing throughout the Litigation, evaluated the trading in Kobe Steel ADRs and ordinary shares on the open market in the United States.  Shortly after the Court's appointment of Lead Plaintiff and Lead Plaintiff's Counsel, Lead Plaintiff's Counsel requested and obtained from the Settling Defendant information concerning the number of ADRs that were outstanding during the Class Period.  Using the information provided by the Settling Defendant, and other publicly available information, Lead Plaintiff and Lead Plaintiff's Counsel consulted with a damages expert and determined that it was in the interest of Lead Plaintiff and the putative Class that the Settling Parties engage in settlement negotiations.  Lead Plaintiff and Lead Plaintiff's Counsel also undertook additional factual and legal investigation and drafted an amended complaint pursuant to the Court's April 17, 2018 order, the filing of which was deferred while the parties were engaged in settlement negotiations.  Between May 18, 2018 and August 10, 2018, the Settling Parties engaged in arm's-length settlement negotiations, which included discussions of the merits of Lead Plaintiff's claims as well as the maximum damages that could be achieved from continued Litigation in the event Lead Plaintiff was completely successful in proving all his claims.  On August 10, 2018, the Settling Parties reached an agreement in principle on the final settlement terms reflected in this Stipulation;

4.     WHEREAS, on March 6, 2018, prior to the opening of the United States securities markets, Kobe Steel issued a press release and a report titled "Report on Misconduct in Kobe Steel Group" ("Report").  The press release and Report contained additional facts relevant to the subject matter of this Litigation.  On March 6-7, 2018, Kobe Steel's ADRs fell an additional $0.44 per ADR, or more than 8%, to close at $4.84 per ADR on March 7, 2018.  Lead Plaintiff also identified that a small number of Kobe Steel ordinary shares traded over-the-counter in the United States.  Lead Plaintiff advised the Settling Defendant during the course of settlement discussions that he intended to extend the class period in the initial complaint through March 5, 2018 and would include in the class ordinary shares traded on the open market in the United States.  Settlement negotiations between the Settling Parties proceeded on that basis as to the Class Period and definition of the Class;

5.     WHEREAS, Lead Plaintiff had deferred serving the individual defendants Hiroya Kawasaki ("Kawasaki"), Yoshinori Onoe ("Onoe"), Akira Kaneko ("Kaneko"), and Naoto Umehara, ("Umehara") (the "Individual Defendants") (collectively with Kobe Steel, the "Defendants") in Japan under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, until after he filed the amended complaint, and accordingly, the Individual Defendants have not been served with a summons and complaint in the Action and are not parties to this Stipulation, although they are Released Parties as defined herein.  Lead Plaintiff had further determined in preparing the amended complaint that whether the Individual Defendants were named in the amended complaint would not increase the overall exposure of the Defendants as a whole, and that certain of the initially-named Individual Defendants may not have liability either as primary or control person defendants;

6.      WHEREAS, in recognition of the attendant risks and costs of continued litigation and the benefits of resolving this Litigation, the Settling Parties hereto desire to settle and resolve any and all actual or potential claims by, between, or among Lead Plaintiff, on the one hand, and the Settling Defendant, on the other hand, arising out of or relating to the subject matter of this Litigation as alleged in the Complaint.  Settling Defendant denies any wrongdoing whatsoever, and this Stipulation shall in no event be construed as, or be deemed to be evidence of, an admission or concession on the part of the Settling Defendant with respect to any actual or potential claim, liability, wrongdoing, or damage whatsoever, or any infirmity in the defenses that the Settling Defendant has asserted.  This Stipulation also shall not be construed as or be deemed to be a concession by the Lead Plaintiff of any infirmity in the claims asserted in the Litigation.  The Settling Parties wish to settle and compromise any and all disputes regarding the Litigation or its subject matter, including but not limited to whether the Litigation was filed by Lead Plaintiff and defended by Settling Defendant in good faith and with adequate basis in fact under Rule 11 of the Federal Rules of Civil Procedure.  The Settling Parties agree that the Litigation is being voluntarily settled after advice of counsel and that the terms of the Settlement are fair, adequate, and reasonable;

7.      WHEREAS, Lead Plaintiff's Counsel has conducted an investigation relating to the claims and the underlying events and transactions alleged in the Litigation.  Lead Plaintiff's Counsel has analyzed the facts and the applicable law with respect to the claims of the Lead Plaintiff against Defendants and the potential defenses thereto, which in the Lead Plaintiff's judgment have provided an adequate and satisfactory basis for the evaluation of an agreement to settle, as described herein;

8.     WHEREAS, based upon the investigation conducted by Lead Plaintiff's Counsel, Lead Plaintiff's Counsel has concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to Lead Plaintiff and the Settlement Class, and in their best interests, and Lead Plaintiff has agreed to settle the claims asserted in the Litigation pursuant to the terms and conditions of this Stipulation, after considering: (a) the substantial benefits that the Settlement Class will receive from settlement of the Litigation; (b) the attendant risks of litigation; and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation;

9.     NOW THEREFORE, without any admission or concession on the part of the Lead Plaintiff of any lack of merit in the Litigation whatsoever, and without any admission or concession on the part of the Settling Defendant of any liability, wrongdoing, or lack of merit in the defenses asserted in the Litigation whatsoever, it is hereby STIPULATED AND AGREED, by and among the Settling Parties, through their respective attorneys, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Settling Parties hereto from the Settlement, that any and all claims made, or that could have been made, including all Settled Claims (as defined below), by the Lead Plaintiff and the Settlement Class against the Released Parties (as defined below) shall be compromised, settled, released, and dismissed with prejudice as provided in this Stipulation and Agreement of Settlement, to the extent as hereafter provided, without costs as to the Lead Plaintiff or Settling Defendant, subject to the approval of the Court, upon and subject to the following terms and conditions:

## A.    DEFINITIONS

As used throughout this Stipulation, the following terms have the meanings specified below:

1.      "Attorneys' Fees and Expenses" means the portion of the Gross Settlement Fund approved by the Court for payment to Lead Plaintiff's Counsel, including attorneys' fees, costs, litigation expenses, and fees and expenses of experts (excluding Notice and Administration Expenses).

2.      "Authorized Claimant" means any Claimant (as defined below) whose claim for recovery has been allowed pursuant to the terms of the Stipulation or by order of the Court.

3.      "Claimant" means any Settlement Class Member who files a Proof of Claim and Release (as defined below) in such form and manner, and within such time, as set forth in this Stipulation, or as the Court shall prescribe.

4.      "Claims Administrator" means the claims administration firm, A.B. Data, Ltd., that Lead Plaintiff's Counsel request be appointed by the Court to administer the Settlement and disseminate notice to the Settlement Class.

5.      "Court" means the United States District Court for the Southern District of New York.

6.      "Defendants" means Kobe Steel, Kawasaki, Onoe, Kaneko, and Umehara.

7.      "Effective Date" means the date on which all of the conditions set forth below in paragraph K.1. have been satisfied and the Court's Order and Final Judgment, substantially in the form of Exhibit B hereto, becomes "Final."  The Court's Order and Final Judgment shall be deemed to be "Final" when either of the following has occurred:  (a) if an appeal or review is not sought by any person from the Order and Final Judgment, the day following the expiration of the

time to appeal or petition from the Order and Final Judgment; or (b) if an appeal or review is sought from the Order and Final Judgment, the day after such Order and Final Judgment is affirmed or the appeal or review is dismissed or denied and such Order and Final Judgment is no longer subject to further judicial review.

8. "Escrow Account" means the interest-bearing account selected by the Escrow Agent.  The Escrow Account shall be managed by the Escrow Agent for the benefit of Lead Plaintiff and the Settlement Class until the Effective Date of the Settlement.

9. "Escrow Agent" means the Claims Administrator or its duly appointed agent(s). The Escrow Agent shall perform the duties as set forth in this Stipulation.

10. "Gross Settlement Fund" means the Settlement Amount plus all interest earned thereon.

11. "Lead Plaintiff" means Daniel Aude.

12. "Lead Plaintiff's Counsel" means Wolf Popper LLP.

13. "Net Settlement Fund" means the Gross Settlement Fund, less: (i) Attorneys' Fees and Expenses; (ii) Notice and Administration Expenses; (iii) taxes; (iv) Award to Lead Plaintiff; and (v) other fees and expenses authorized by the Court.

14. "Notice and Administration Account" means the portion of the Gross Settlement Fund and maintained by Lead Plaintiff's Counsel.  The Notice and Administration Account may be drawn upon by Lead Plaintiff's Counsel for Notice and Administration Expenses without further order of the Court.  The Notice and Administration Account is not required to be in an account separate of the Escrow Account.

15. "Notice and Administration Expenses" means all expenses incurred (whether or not paid) in connection with the preparation, printing, mailing, and publication of the Notice to

the Settlement Class of the proposed settlement, and all expenses of Settlement administration; provided, however, that none of these expenses shall be deemed to include Attorneys' Fees and Expenses through the Effective Date.  All such Notice and Administration Expenses shall be paid from the Gross Settlement Fund.

16.    "Order and Final Judgment" means the order and judgment entered by the Court, including a bar order precluding contribution claims as contemplated under the Private Securities Litigation Reform Act of 1995, approving the Settlement and dismissing the Litigation as against Defendants with prejudice and without costs to any party.

17.    "Person" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, affiliate, joint stock company, trust, estate, unincorporated association, government, or any political subdivision or agency thereof, any other type of legal or political entity, any legal representative, and, as applicable, their respective spouses, heirs, predecessors, successors, representatives, and assigns.

18.    "Plan of Allocation" means the plan for allocating the Net Settlement Fund (as set forth in the Notice of Proposed Class Action Settlement (the "Notice"), attached as Exhibit A-2 to the [Proposed] Order Preliminarily Approving Settlement and Providing Notice (Exhibit A hereto)) to Authorized Claimants after payment of Notice and Administration Expenses, Taxes and Tax Expenses, and Attorneys' Fees and Expenses.  Any Plan of Allocation is not part of the Stipulation and the Released Parties shall have no liability with respect thereto.

19.    "Released Parties" means Kobe Steel, Kawasaki, Onoe, Kaneko, and Umehara, and any of their current, former, or future parents, subsidiaries, affiliates, partners, joint venturers, officers, directors, principals, shareholders, members, agents (acting in their capacity

as agents), employees, attorneys, trustees, insurers, reinsurers, advisors, associates, and/or any other individual or entity in which any Defendant has or had a controlling interest or which is or was related to or affiliated with any Defendant, and the current, former, and future legal representatives, heirs, successors-in-interest, or assigns of any Defendant.

20.     "Settled Claims" means any and all claims, debts, demands, liabilities, rights, and causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liabilities whatsoever), whether based on federal, state, local, statutory or common law, or any other law, rule, or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and Unknown Claims (as defined below):  (i) that have been asserted in the Litigation by the Lead Plaintiff and/or Settlement Class Members or any of them against any of the Released Parties, including, without limitation, all statements made by any of the Defendants that Lead Plaintiff alleges in the Litigation were false or misleading, or any of the alleged acts, omissions, representations, facts, events, matters, transactions, or occurrences asserted in or relating to the Litigation, or otherwise alleged, asserted, or contended in the Litigation; or (ii) that relate to the purchase of Kobe Steel ADRs or ordinary shares on the open market in the United States, including, without limitation, claims for fraud, negligent misrepresentation, or claims based upon or related in any way to the purchase, acquisition, or sale of Kobe Steel ADRs or ordinary shares in the United States during the Class Period by the Lead Plaintiff or any Settlement Class Member, on behalf of themselves, their heirs, executors, administrators, successors, and assigns against the Released Parties or any of them.  Settled Claims also include any and all claims arising out of, relating to, or in connection with the

Settlement or resolution of the Litigation against the Released Parties (including Unknown Claims that arise out of, relate to, or are in connection with the Settlement or resolution of the Litigation against the Released Parties), except claims to enforce any of the terms of this Stipulation.  Notwithstanding any of the foregoing, claims among Kobe Steel and the Individual Defendants themselves, including but not limited to claims for contractual and/or statutory indemnity (including advancement of defense costs) by present and former officers and directors of Kobe Steel, as well as claims for insurance coverage by the Defendants, and Kobe Steel's current, former, or future officers and directors are expressly preserved and nothing in this Stipulation or the Order and Final Judgment shall apply to extinguish, bar, discharge, waive or otherwise affect such claims.

21.     "Settled Defendants' Claims" means all claims, demands, rights, remedies, liabilities, and causes of action of every nature and description whatsoever, whether based on federal, state, local, statutory, or common law, or any other law, rule, or regulation, including both known and Unknown Claims, that (i) have been or could have been asserted in the Litigation by Defendants, or any of them, or the successors and assigns of any of them, against the Lead Plaintiff, Settlement Class Members, or any of their attorneys, and (ii) arise out of or relate in any way to the institution, prosecution, or Settlement of this Litigation or the Settled Claims, including but not limited to all claims for malicious prosecution or sanctions.  "Settled Defendants' Claims" does not include claims to enforce any of the terms of this Stipulation.

22.     "Settlement Class" and "Settlement Class Members" mean, for purposes of this Settlement, all persons or entities who purchased or otherwise acquired ADRs or ordinary shares of Kobe Steel on the open market in the United States during the period from May 29, 2013 through and including March 5, 2018, and were allegedly damaged thereby.  Excluded from the

Settlement Class are the Defendants, members of their immediate families and their legal representatives, heirs, successors or assigns, current or former officers of Kobe Steel, and any entity in which any Defendant or excluded person has or had a controlling interest. Also excluded from the Settlement Class are those persons who file valid and timely requests for exclusion in accordance with the Court's Order Preliminarily Approving Settlement and Providing Notice ("Preliminary Approval Order") concerning this Stipulation.

23.     "Settlement Class Distribution Order" means the order entered by the Court, upon application of Lead Plaintiff's Counsel following the occurrence of the events identified in paragraph D.13. below, which authorizes the Claims Administrator to distribute the Net Settlement Fund to the Settlement Class.

24.     "Settlement Class Period" means the period from May 29, 2013 through March 5, 2018.

25.     "Settlement" means the settlement contemplated by this Stipulation.

26.     "Settlement Amount" means a fund in the amount of $500,000 (five hundred thousand U.S. dollars).

27.     "Settlement Hearing" means the final hearing to be held by the Court to determine:  (1) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (2) whether all Settled Claims should be dismissed with prejudice; (3) whether an order approving the Settlement should be entered thereon; (4) whether the allocation of the Settlement Fund should be approved; and (5) whether the application for an award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff should be approved.

28.     "Unknown Claims" means (a) any Settled Claim that the Lead Plaintiff or any Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of

the release of the Released Parties, which if known by him, her, or it, might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, the decision not to object to the Settlement, provided such claim arises out of or relates to the purchase or sale of Kobe Steel ADRs or ordinary shares, and (b) any Settled Defendants' Claims that any Defendant does not know or expect to exist in his, her, or its favor, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement. With respect to any and all Settled Claims and Settled Defendants' Claims, the Settling Parties stipulate and agree that upon the Effective Date, the Settling Parties shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived and by operation of the Order and Final Judgment shall have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

**B.     SETTLEMENT CONSIDERATION, RELEASES AND BAR ORDER**

**1.     Consideration by Settling Defendant.**

a.     In consideration of the dismissal of the Litigation with prejudice and of the release of the Settled Claims by the Lead Plaintiff and the Settlement Class Members and the other undertakings of the Lead Plaintiff and the Settlement Class Members provided for herein, and subject to the terms of this Stipulation, Kobe Steel will pay the sum of $500,000 (five hundred thousand U.S. dollars) into the Escrow Account within seven (7)

business days after the Court enters the Preliminary Approval Order.  That payment shall constitute the Settlement Amount.

2.     **Release of Claims.**

a.     The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Litigation and of all Settled Claims as against all Released Parties and any and all Settled Defendants' Claims as against the Lead Plaintiff, the Settlement Class Members, and their attorneys.

b.     Pursuant to the Order and Final Judgment, upon the Effective Date of this Settlement, the Lead Plaintiff and the Settlement Class Members, and each of them, on behalf of themselves, and each of their current, past and future trusts, estates, beneficiaries, heirs, joint tenants, tenants in common, executors, administrators, trustees, predecessors, successors, partners, spouses, parents, subsidiaries, affiliates, attorneys, consultants, experts, brokers, creditors, agents, representatives, and assigns, and any Person that any of them represents, shall release and forever relinquish and discharge, and shall forever be enjoined from prosecuting, all of the Settled Claims and all claims arising out of, relating to, or in connection with the Settlement, the Litigation, and/or the resolution of the Litigation against the Released Parties, whether or not such Settlement Class Member executes and delivers the Proof of Claim and Release, except claims to enforce any of the terms of this Stipulation.  Further, the Lead Plaintiff and the Settlement Class Members, and each of them, on behalf of themselves and each of their current, past and future trusts, estates, beneficiaries, heirs, executors, administrators, trustees, predecessors, successors, partners, spouses, parents, subsidiaries, affiliates, attorneys, consultants, experts, brokers, creditors, agents, representatives, and assigns,

expressly covenant not to assert any claim or action against any of the Released Parties that:  (i) arises out of or relates to the purchase, acquisition, holding, disposition, or sale of Kobe Steel ADRs or ordinary shares on the open market in the United States, or (ii) that could have been alleged, asserted, or contended in any forum by the Lead Plaintiff, the Settlement Class Members, or any of them, against any of the Released Parties, arising out of or relating to the purchase, acquisition, holding, disposition, or sale of Kobe Steel ADRs or ordinary shares on the open market in the United States, and shall forever be enjoined from commencing, instituting, and/or prosecuting any such claim.

   c. Pursuant to the Order and Final Judgment, upon the Effective Date of this Settlement, Settling Defendant shall release and forever discharge each and every one of the Settled Defendants' Claims, and shall forever be enjoined from prosecuting Settled Defendants' Claims against any of the Lead Plaintiff, Settlement Class Members, or their attorneys, including but not limited to claims for malicious prosecution or sanctions.

  3. **Settlement Discharge and Bar Order.**  At the time of or prior to the Settlement Hearing, the Settling Parties shall submit for entry by the Court, if the Court approves the Settlement provided for herein, a Bar Order pursuant to Section 201 (a)(7) of the Private Securities Litigation Reform Act of 1995, 15 U.S. C. § 78u-4(f)(7), providing for the maximum protection to which Released Parties are entitled under the law with respect to discharge and bar of all future claims for contribution or indemnity by all other persons, arising out of or in any way related to the subject matter of this Action, whether under federal, state or common law, or any other principle of law or equity.  The Bar Order to be entered by the Court as part of the Final Judgment and Order of Dismissal shall be substantially in the following form:

14

a.      All claims for contribution and indemnification, however denominated, against Released Parties arising under the federal securities laws, state law or common law with respect to the events that are the subject of the Action, in favor of persons who are alleged to be, responsible for or jointly responsible with Released Parties in any manner in the Settled Claims and based upon liability for, or arising out of or relating in any way to, the Settled Claims are extinguished, discharged, barred, satisfied and/or otherwise unenforceable.

b.      All Persons, are hereby barred and permanently enjoined, to the fullest extent allowed by law, from asserting, instituting or prosecuting in any capacity, before any court or governmental agency, any action or proceeding against Released Parties for equitable, partial, comparative, or complete contribution, subrogation, or indemnity, however denominated, based upon liability for, or arising out of or relating in any way to the Settled Claims, and the Court finds that all such claims are extinguished, discharged, satisfied and made unenforceable.

c.      All claims by Released Parties for contribution and indemnification, however denominated, arising under the federal securities laws, state law or common law with respect to the events that are the subject of the Action, against any person other than a person whose liability has been extinguished by the settlement of Released Parties, and based upon liability for, or arising out of or relating in any way to, the Settled Claims are extinguished, discharged, barred, satisfied and/or otherwise unenforceable.

d.      The remaining portions of 15 U.S.C. § 78u-4(f) on proportionate liability shall apply hereto where applicable.

C.    **ADMINISTRATION OF THE SETTLEMENT FUND**

1.    The Gross Settlement Fund, net of any Taxes (as defined below) on the income thereof and any Tax Expenses (as defined below), shall be used to pay: (i) the Notice and Administration Expenses as authorized by this Stipulation; (ii) Attorneys' Fees and Expenses authorized by the Court; (iii) any Award to Lead Plaintiff authorized by the Court; and (iv) other fees and expenses authorized by the Court.  The balance of the Gross Settlement Fund remaining after the above payments shall be the Net Settlement Fund, which shall be distributed to the Authorized Claimants in accordance with this Stipulation.

2.    Any sums required to be held in escrow hereunder shall be held by the Escrow Agent for the benefit of the Lead Plaintiff and the Settlement Class until the Effective Date. Until the date the Order and Final Judgment is entered, all payments made from the Settlement Fund, except Notice and Administration Expenses, shall require the signature of an authorized representative of both the Escrow Agent and Defendants' counsel.  After the Order and Final Judgment is entered, payments made from the Settlement Fund shall require only the signature of an authorized representative of the Escrow Agent and shall not require the signature of Defendants' counsel's authorized representative.  All funds held by the Escrow Agent shall be deemed to be in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to this Stipulation and/or further order of the Court. Other than amounts disbursed for providing notice to the Settlement Class, customary administration costs, and Taxes and Tax Expenses, and the Attorneys Fee and Expenses (which shall be paid to Lead Plaintiff's Counsel within two (2) business days after the Court executes an order awarding such fees and expenses), the Settlement Fund shall not be

distributed until the Effective Date.  The Escrow Agent shall not disburse the Gross Settlement Fund, or any portion thereof, except as provided in this Stipulation, or upon Order of the Court.

3.     The Escrow Agent shall invest any funds in excess of $150,000 in an interest bearing account, and shall collect and reinvest all interest accrued thereon.  Any funds held in escrow in an amount of less than $150,000 may be held in a bank account insured to the extent possible by the FDIC.  Interest earned on the money deposited into the Escrow Account shall be part of the Gross Settlement Fund.

4.     The Notice and Administration Expenses shall be paid from the Gross Settlement Fund.  In order to pay Notice and Administration Expenses, $30,000 shall be designated from the Gross Settlement Fund upon the entry of the Preliminary Approval Order.  Any monies from the Notice and Administration Fund that remain after administration shall be returned to the Net Settlement Fund. The Notice and Administration Account may be drawn upon by Lead Plaintiff's Counsel for Notice and Administration Expenses without further Court approval. The Notice and Administration Account shall be administered solely by the Escrow Agent.  Any taxes or other expenses incurred in connection with the Notice and Administration Account shall be paid from the Notice and Administration Account or from the remainder of the Gross Settlement Fund.  The Released Parties shall not have any obligation for payment of taxes or other expenses associated with the Notice and Administration Account.   Notice and Administration Expenses in excess of $30,000 shall not be paid out of the Gross Settlement Fund until after the Effective Date.  In no event shall an amount more than the Settlement Amount be paid for Notice and Administration Expenses, and in no event shall the Released Parties be responsible to pay any amount for Notice and Administration Expenses.

5.     The Settling Defendant shall have access to all records of the Escrow Account, and upon request made to the Escrow Agent, shall receive copies of all records of disbursements, deposits, and statements of accounts.

6.     After the Effective Date, the Released Parties shall have no interest in the Gross Settlement Fund or in the Net Settlement Fund.  The Released Parties shall not be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for the payment of claims, taxes, legal fees, or any other expenses payable from the Gross Settlement Fund.

**D.     ADMINISTRATION AND CALCULATION OF CLAIMS, FINAL AWARDS, AND DISTRIBUTION OF NET SETTLEMENT FUND**

1.     The Claims Administrator shall administer and calculate the claims that shall be allowed and oversee distribution of the Net Settlement Fund, pursuant to the Plan of Allocation, under the supervision of Lead Plaintiff's Counsel, and subject to appeal to, and jurisdiction of, the Court.  The Released Parties shall have no liability, obligation, or responsibility for the administration of the Gross Settlement Fund or Net Settlement Fund, or for the distribution of the Net Settlement Fund.

2.     Except as otherwise provided below, on and after the Effective Date, the Gross Settlement Fund shall be applied as follows:

a.     To the extent not paid from the Notice and Administration Account, to pay following an order of the Court approving any such payment, the expenses incurred in connection with providing notice to Settlement Class Members, administering and distributing the Net Settlement Fund to Settlement Class Members, processing Proofs of Claim, processing requests for exclusion, escrow fees and costs, and any applicable taxes;

18

b.  Subject to the approval and further order(s) of the Court, the Net Settlement Fund shall be allocated to Authorized Claimants as set forth in paragraph F.1-6. below.

c.  After the Claims Administrator calculates the recognized losses of each Authorized Claimant, Lead Plaintiff's Counsel shall file a motion for distribution of the Settlement Fund with the Court listing each Authorized Claimant, the amount of each claim that Lead Plaintiff's Counsel believes should be allocated and distributed to each such Authorized Claimant, accounting for all Notice and Administration Expenses, and requesting Court approval to distribute the Settlement Fund to the Authorized Claimants and pay any further Notice and Administration expenses.

3.  Each Settlement Class Member wishing to participate in the Settlement shall be required to submit a Proof of Claim and Release (in substantially the form set forth in Exhibit A-3 hereto, which *inter alia* releases all Settled Claims against all Released Parties), signed under penalty of perjury by the beneficial owner(s) of the ADR or ordinary shares that are the subject of the Proof of Claim and Release, or by someone with documented authority to sign for the beneficial owners and supported by such documents as specified in the instructions accompanying the Proof of Claim and Release.

4.  All Proofs of Claim must be postmarked or received within the time prescribed in the Preliminary Approval Order unless otherwise ordered by the Court.  Any Settlement Class Member who fails to submit a properly completed Proof of Claim within such period as shall be authorized by the Court shall be forever barred from receiving any payments pursuant to this Stipulation or from the Net Settlement Fund (unless Lead Plaintiff's Counsel in its discretion

deems such late filing to be a formal or technical defect, or unless by Order of the Court a later submitted Proof of Claim by such Settlement Class Member is approved), but will in all other respects be subject to the provisions of this Stipulation and Order and Final Judgment, including, without limitation, the release of the Settled Claims and dismissal of the Litigation. Provided that it is received before the motion for the Settlement Class Distribution Order is filed, a Proof of Claim shall be deemed to have been submitted when posted if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator.

5.     Each Proof of Claim shall be submitted to the Claims Administrator who shall determine, under the supervision of Lead Plaintiff's Counsel, in accordance with this Stipulation and any applicable orders of the Court, the extent, if any, to which each claim shall be allowed, subject to appeal to the Court. No later than seven (7) days prior to disbursement of the Net Settlement Fund, Lead Plaintiff's Counsel shall provide the Settling Defendant with a list of Proofs of Claim received by the Claims Administrator indicating which Proofs of Claim have been allowed by the Claims Administrator.

6.     Following notice to Defendants' counsel, Lead Plaintiff's Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Proofs of Claim filed, where doing so is in the interest of achieving substantial justice.

7.     Proofs of Claim that do not meet the filing requirements may be rejected. Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the Claimant in order to remedy curable deficiencies in the Proof of Claim submitted. The Claims Administrator, under the supervision of Lead Plaintiff's Counsel, shall notify in a timely fashion and in writing,

all Claimants whose Proofs of Claim they propose to reject in whole or in part, setting forth the reasons thereof, and shall indicate in such notice that the Claimant whose claims are to be rejected has the right to review by the Court if the Claimant so desires and complies with the requirement of paragraph D.8. below.

8.      If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the date of mailing of the notice required by paragraph D.7. above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's ground for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Lead Plaintiff's Counsel shall thereafter present the request for review to the Court.

9.      The administrative determination of the Claims Administrator accepting and rejecting claims shall be presented to the Court, on notice to Defendants' Counsel, for approval by the Court in the Settlement Class Distribution Order.

10.      Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's claim, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim. No discovery shall be allowed on the merits of the Litigation or Settlement in connection with processing of the Proofs of Claim.

11.      Payment pursuant to this Stipulation shall be deemed final and conclusive against all Settlement Class Members.  All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but

are otherwise bound by all of the terms of the Order and Final Judgment to be entered in the Litigation and the releases provided for herein, and will be barred from bringing any action against the Released Parties arising out of or relating to the Settled Claims.

12. All proceedings with respect to the administration, processing, and determination of claims described by this paragraph of this Stipulation and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

13. The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator upon application to the Court by Lead Plaintiff's Counsel for a Settlement Class Distribution Order only after all of the following having occurred: (i) the Effective Date; (ii) all claims have been processed, and all Claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance; (iii) all objections with respect to all rejected or disallowed claims have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; (iv) all matters with respect to Attorneys' Fees and Expenses, costs, and disbursements have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; and (v) all costs of administration have been paid.

14. If any funds remain in the Net Settlement Fund by reason of uncashed checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Settlement Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be re-distributed, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-

distribution, to Settlement Class Members who have cashed their checks and who would receive at least $10.00 from such re-distribution.  If any funds shall remain in the Net Settlement Fund six months after such re-distribution, then such balance shall be contributed to a non-sectarian non-profit organization or charity selected by Lead Plaintiff's Counsel.

15.     Before the Effective Date, Lead Plaintiff's Counsel shall file with the Court a declaration under penalty of perjury describing how notice of the Settlement was given to the Settlement Class.

## E.     TAX TREATMENT

1.     The Parties agree to treat the Gross Settlement Fund as being at all times a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1 and Section 468B of the Internal Revenue Code, as amended, for the taxable years of the Gross Settlement Fund, beginning with the date it is created.  In addition, the Escrow Agent and, as required, the Settling Parties, shall jointly and timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)(2)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Lead Plaintiff's Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

2.     For purposes of Section 468B of the Internal Revenue Code, as amended, and the regulations promulgated thereunder, the "administrator" shall be Lead Plaintiff's Counsel.  Lead Plaintiff's Counsel shall timely and properly file all tax returns necessary or advisable with respect to the Gross Settlement Fund, and make all required tax payments, including deposits of

estimated tax payments in accordance with Treas. Reg. § 1.468B-2(k).  Such returns (as well as

the election described in paragraph E.1. hereof) shall be consistent with this paragraph and

reflect that all taxes (including any interest or penalties) on the income earned by the Gross

Settlement Fund shall be paid out of the Gross Settlement Fund as provided in paragraph E.3.

hereof.

3.      All (i) taxes (including any interest or penalties) arising with respect to the

income earned by the Gross Settlement Fund, including any taxes or tax detriments that may be

imposed upon Defendants with respect to any income earned by the Gross Settlement Fund for

any period during which the Gross Settlement Fund does not qualify as a qualified settlement

fund for Federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in

connection with the operation and implementation of this paragraph (including, without

limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and

expenses relating to filing (or failing to file) the returns described in this paragraph) ("Tax

Expenses"), shall be paid out of the Gross Settlement Fund.  In all events, the Released Parties

shall have no liability for Taxes or the Tax Expenses, and Lead Plaintiff's Counsel agree to

indemnify and hold the Released Parties harmless for Taxes and Tax Expenses.  Further, Taxes

and Tax Expenses shall be treated as, and considered to be, a cost of administration of the

Settlement and shall be timely paid by the Escrow Agent out of the Gross Settlement Fund

without prior order from the Court.  The Escrow Agent shall be obligated (notwithstanding

anything herein to the contrary) to withhold from distribution to the Settlement Class Members

any funds necessary to pay such Taxes and Tax Expenses, including the establishment of

adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required

to be withheld under Treas. Reg. § 1468B-2(l)(2)).  The Released Parties shall have no

responsibility or liability therefor.  The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

**F.      ALLOCATION OF NET SETTLEMENT FUND**

1.       The proposed Plan of Allocation is based upon Lead Plaintiff's Counsel's assessment of the merits and the relative strengths and weaknesses, including recoverable damages, of the claims of the Settlement Class Members.

2.       Defendants do not and shall not take any position as to the proposed Plan of Allocation.

3.       The Released Parties shall have no responsibility for and no obligations or liabilities of any kind whatsoever in connection with the determination, administration, calculation, or payment of claims to Settlement Class Members.

4.       Defendants shall have no involvement in the solicitation of, or review of Proofs of Claim, or involvement in the administration process itself, which shall be conducted by the Claims Administrator in accordance with this Stipulation and the Order and Final Judgment to be entered by the Court.  No Claimant or Authorized Claimant shall have any claim against the Released Parties or their counsel based on, or in any way relating to, the distributions from either the Gross Settlement Fund or the Net Settlement Fund.

5.       No Authorized Claimant shall have any claim against Lead Plaintiff's Counsel or the Claims Administrator based on, or in any way relating to, the distributions from the Net Settlement Fund that have been made substantially in accordance with this Stipulation and any applicable orders of the Court.

6.      Any change in the allocation of the Net Settlement Fund ordered by the Court shall not affect the validity or finality of this Settlement.

## G.      OBLIGATIONS OF AND LIMITATIONS OF LIABILITY OF ESCROW AGENT

1.      The Escrow Agent shall not be responsible for the payment of any sums due to Authorized Claimants or other Persons, except to the extent of maintaining account of and properly paying sums as required by this Stipulation to the limited extent that such sums have been delivered into the Escrow Account or Notice and Administration Account as required by this Stipulation.  The Escrow Agent shall be liable only for acts of gross negligence or willful misconduct.

## H.      LEAD PLAINTIFF'S COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

1.      Lead Plaintiff's Counsel intends to submit an application to the Court, on notice to counsel for Defendants, for the payment of Attorneys' Fees and Expenses, including: (i) an award of attorneys' fees up to 25% of the Settlement Amount; (ii) reimbursement of litigation costs and expenses, plus interest, including fees and expenses of experts, incurred in connection with the prosecution of the Litigation; and (iii) an Award to Lead Plaintiff (for reimbursement of time and expenses).

2.      Any attorneys' fees and costs and Award to Lead Plaintiff awarded by the Court shall be paid from the Gross Settlement Fund within two (2) business days after the Court executes an order awarding such fees and expenses.  Lead Plaintiff's Counsel may thereafter allocate the attorneys' fees among other Plaintiffs' counsel in a manner in which Lead Plaintiff's Counsel in good faith believe reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.  If, and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the Attorneys' Fee and Expense

award is overturned or lowered, or if the settlement is terminated or is not approved by the Court, or if there is an appeal and any order approving the Settlement does not become final and binding upon the Class, then, within five (5) business days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction, Lead Plaintiff's Counsel shall refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification.  Each such Plaintiffs' counsel's law firm receiving fees and expenses, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

3.      Lead Plaintiff's Counsel waives the right to make an additional application or applications for payment from the Gross Settlement Fund for fees and expenses incurred after the Settlement Hearing. The other Settling Parties shall take no position on any application concerning Lead Plaintiff's Counsel's request or award of attorneys' fees and reimbursement of expenses, or Award to Lead Plaintiff.

4.      It is agreed that the procedure for and the allowance or disallowance by the Court of any applications by Lead Plaintiff's Counsel for Attorneys' Fees and Expenses, including fees for experts and consultants to be paid out of the Gross Settlement Fund, and any order or proceeding relating thereto, shall not operate to terminate or cancel this Stipulation or affect its finality, and shall have no effect on the terms of this Stipulation or on the enforceability of this Settlement.

## I.     THE PRELIMINARY APPROVAL ORDER

1.      Promptly after execution of this Stipulation, the Settling Defendant and Lead Plaintiff shall submit the Stipulation together with its exhibits to the Court and shall jointly apply for entry of a Preliminary Approval Order in connection with settlement proceedings substantially in the form annexed hereto as Exhibit A, providing for, among other things, preliminary approval of the Settlement and notice to the Settlement Class of the Settlement Hearing.  The Preliminary Approval Order to be submitted to the Court shall contain exhibits substantially in the form set forth in:  (i) the Postcard Notice of Proposed Class Action Settlement (the "Postcard Notice") (Exhibit A-1 to the Preliminary Approval Order); (ii) the Notice of Proposed Class Action Settlement (the "Notice") (Exhibit A-2 to the Preliminary Approval  Order); (iii) the Proof of Claim and Release (Exhibit A-3 to the Preliminary Approval Order); and (iv) the Summary Notice of Pendency and Settlement of Class Action ("Summary Notice") (Exhibit A-4 to the Preliminary Approval Order).

2.      The Released Parties are not liable or responsible for the method of, or representations made in, the Notice or the Summary Notice.

## J.     ORDER AND FINAL JUDGMENT TO BE ENTERED BY THE COURT APPROVING THE SETTLEMENT

1.      The Settling Defendant and Lead Plaintiff shall seek to have the Court enter an Order and Final Judgment substantially in the form of Exhibit B hereto.

## K.     CONDITIONS OF SETTLEMENT

1.      The Effective Date of the Settlement shall be conditioned upon the occurrence of ALL of the following events:

a.      The Court shall enter the Preliminary Approval Order in all material respects, as required by paragraph I.1. above;

b.       No party shall have exercised within the required time period any right to terminate the Settlement as permitted by paragraph L.1-6. below;

c.       The Court shall enter the Order and Final Judgment in all material respects, as required by paragraph J.1. above;

d.       The Court's Order and Final Judgment, substantially in the form of Exhibit B, shall have become "Final," as defined in paragraph A.7.; and

e.       The sum of $500,000 (five hundred thousand U.S. dollars) shall have been paid, as set forth in paragraph B.1. above.

2.       Upon occurrence of ALL of the events referenced in paragraph K.1. above, Lead Plaintiff shall have, and each and all of the members of the Settlement Class shall hereby be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever, released, settled, and discharged, in accordance with the terms of paragraph B.2. above, the Released Parties from and with respect to the Settled Claims, whether or not such members of the Settlement Class execute and deliver a Proof of Claim.

**L.    RIGHTS OF TERMINATION AND EFFECTS THEREOF**

1.       The Settling Defendant and Lead Plaintiff shall each have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other counsel of the Settling Parties within thirty (30) days after the date on which any of the following occurs:

a.       the Court issues an order declining to enter the Preliminary Approval Order in any material respect;

b.       the Court issues an order declining to approve this Stipulation or any material part of it;

c.      the Court declines to enter the Order and Final Judgment in all material respects as required by paragraph J.1. above;

d.      the Order and Final Judgment is modified or reversed in any material respect by a Court of Appeals or the United States Supreme Court; or

e.      in the event that the Court enters an order and final judgment in a form other than that provided above (an "Alternative Judgment") and none of the Settling Parties elects to terminate this Settlement, the date that such Alternative Judgment is modified or reversed in any material respect by a Court of Appeals or the Supreme Court.

2.      If the Settlement Amount payable pursuant to paragraph B.1. of this Stipulation is not paid, then Lead Plaintiff, in his sole discretion, may elect, at any time prior to the Court's entering the Order and Final Judgment, (a) to terminate the Settlement by providing written notice to the Settling Parties; or (b) to enforce the terms of the Settlement and this Stipulation and seek a judgment effecting the terms herein.

3.      Upon termination of the Stipulation pursuant to the terms of the Stipulation, the Escrow Agent shall refund the Gross Settlement Fund, less amounts already expended for notice to the Settlement Class pursuant to the terms of the Stipulation, to the Settling Defendant within ten (10) business days thereafter (the "Returned Settlement Amount").

4.      If this Stipulation is terminated pursuant to its terms at the request of the Settling Defendant or Lead Plaintiff, the Escrow Agent or his designee shall apply for any tax refund owed to the Gross Settlement Fund and pay the percentage of the proceeds of the tax refund, after deduction of any fees and expenses incurred in connection with such application(s) for refund, to the Settling Defendant.

5.      If this Stipulation is terminated pursuant to its terms, all of the Settling Parties, together with the Individual Defendants, shall be deemed to have reverted to their respective status prior to the execution of this Stipulation, and they shall proceed in all respects as if this Stipulation had not been executed and the related orders had not been entered, preserving in that event all of their respective claims and defenses in the Litigation, and shall revert to their respective positions in the Litigation, except that the provisions of paragraphs E.1-3., G.1., L.4-6., M.10-11., and M.13. shall survive termination.

6.      No order of the Court or modification or reversal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, and expenses awarded by the Court shall constitute grounds for cancellation or termination of the Stipulation.

## M.      MISCELLANEOUS PROVISIONS

1.      The Settling Parties:

a.      Acknowledge that it is their intent to consummate the Settlement contemplated by this Stipulation;

b.      Agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of this Stipulation; and,

c.      Agree to exercise their best efforts and to act in good faith to accomplish the foregoing terms and conditions of the Stipulation.

2.      The Settling Parties acknowledge and warrant as follows:

d.      By executing this Stipulation, each of the Settling Parties represents that they have carefully read and fully understand this Stipulation and its final and binding effect;

e.      By executing this Stipulation, each of the Settling Parties represents that they have the right, legal capacity, power and authority to enter into this Stipulation and to perform their obligations hereunder, without the consent, approval, or authorization of any person, board, entity, tribunal, or other regulatory or governmental authority;

f.      By executing this Stipulation, each of the Settling Parties represents that the execution and delivery of this Stipulation and the performance of each and every obligation in this Stipulation do not and will not result in a breach of or constitute a default under, or require any consent under, any duty, relationship, contract, agreement, covenant, promise, guarantee, obligation or instrument to which the executing Settling Party is a party or by which the executing Settling Party is bound or affected;

g.      By executing this Stipulation, each of the Settling Parties represents that there is no demand for monetary, non-monetary, or injunctive relief, or any civil, criminal, administrative, or arbitration proceeding for monetary, non-monetary, or injunctive relief known or suspected to exist against them that would affect this Stipulation or their ability to enter into, execute or perform each and every obligation in this Stipulation;

h.      By executing this Stipulation, each of the Settling Parties represents that no representations or promises of any kind or character have been made by any other Settling Party, Released Party, or anyone else to induce the execution of this Stipulation except as expressly provided herein;

i.      By executing this Stipulation, each of the Settling Parties represents that this Stipulation is fair and is executed voluntarily, with full knowledge of the consequences and implications of the obligations contained herein;

j.      By executing this Stipulation, each of the Settling Parties represents that this Stipulation is not the result of any fraud, duress, or undue influence, and that they have not assigned, transferred, or conveyed or purported to assign, transfer, or convey, voluntarily, involuntarily or by operation of law, any or all of their respective rights and claims;

k.      By executing this Stipulation, each of the Settling Parties represents that they have been represented by counsel of their choice that is duly licensed to practice in the State of New York throughout the negotiations which preceded the execution of this Stipulation and in connection with the preparation and execution of this Stipulation; and,

l.      By executing this Stipulation, each of the Settling Parties represents that they have been afforded sufficient time and opportunity to review this Stipulation with advisors and counsel of their choice.

3.      All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

4.      No amendment or modification of this Stipulation shall be effective unless in writing and signed by the Settling Parties or their successors-in-interest.

5.      This Stipulation, including the exhibits attached hereto, constitutes the entire agreement among the Settling Parties, and no representations, warranties, or inducements have been made to any Settling Party concerning this Stipulation or its exhibits, other than the representations, warranties, and covenants contained and memorialized in such documents.

6.      Except as otherwise provided herein, each Settling Party shall bear its own costs. Lead Plaintiff's Counsel's Attorneys' Fees and Expenses, subject to Court approval, shall be

paid only out of the Gross Settlement Fund, and the Released Parties shall have no obligation with respect to the payment of said Attorneys' Fees and Expenses.

7.      Lead Plaintiff's Counsel, on behalf of the Settlement Class, is expressly authorized to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms and is also expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Settlement Class.

8.      The persons signing this Stipulation represent that they are authorized to do so on behalf of their respective clients.

9.      This Stipulation may be executed in one or more original, photocopied, or facsimile counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  The Settling Parties shall exchange among themselves original signed counterparts of this Stipulation, and a complete set of executed counterparts of this Stipulation shall be filed with the Court.

10.     This Stipulation shall be binding upon, and inure to the benefit of, the successors, assigns, executors, administrators, heirs, and legal representatives of the Settling Parties.  No assignment shall relieve any party hereto of any obligations hereunder.

11.     All terms of this Stipulation and all exhibits hereto shall be governed and interpreted according to the laws of the State of New York without regard to its rules of conflicts of law, except to the extent that federal law requires that federal law governs, and in accordance with the laws of the United States.

12.     None of the Settling Parties shall be considered to be the drafter of this Stipulation or any provision hereof for purposes of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

Because of the arm's-length negotiations that preceded the execution of this Stipulation, all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

13.     This Stipulation and Settlement, whether or not consummated, and any negotiations, proceedings, agreements and orders relating to the Stipulation or the Settlement, and any matters arising in connection with such settlement negotiations, proceedings and agreements:

a.     shall not be described as, construed as, offered or received against any Defendant or any of the Released Parties as evidence of and/or construed as or deemed to be evidence of any presumption, concession or admission by any of them of the truth of any fact alleged by Lead Plaintiff in the Litigation, of the validity of any claim that was or could have been asserted in the Litigation, or of the deficiency of any defense that was or could have been asserted in the Litigation or in any other litigation, or of any liability, loss, damage, negligence, fault or wrongdoing whatsoever;

b.     shall not be described as, construed as, offered or received against any Defendant or any of the Released Parties as evidence of and/or construed as or deemed to be evidence of any presumption, concession or admission by any of them that the consideration to be provided hereunder, or the proposed Plan of Allocation, represents the amount that could be or would have been awarded to Lead Plaintiff or the Settlement Class Members after trial.

14.     The Settling Parties intend the Settlement to be a final and complete resolution of all claims and disputes asserted or that could be asserted by the Settlement Class Members against the Released Parties with respect to the Settled Claims.  Accordingly, unless the Court's

Order and Final Judgment approving the Settlement does not become Final, the Settling Parties agree not to assert in any forum that the Litigation was brought by Lead Plaintiff or defended by Defendants in bad faith or without a reasonable basis.  Additionally, the Settling Parties shall not assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Litigation.  The Settling Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

15.    The headings in this Stipulation are used for purposes of convenience and ease of reference only and are not meant to have any legal effect, nor are they intended to influence the construction of this Stipulation in any way.

16.    The waiver of one Settling Party of any breach of this Stipulation by any other Settling Party shall not be deemed a waiver of any other breach of this Stipulation.  The provisions of this Stipulation may not be waived except by a writing signed by the affected Settling Party or counsel for that Settling Party. No failure or delay on the part of any Settling Party in exercising any right, remedy, power, or privilege under this Stipulation shall operate as a waiver thereof or of any other right, remedy, power, or privilege of such Settling Party under this Stipulation; nor shall any single or partial exercise of any right, remedy, power, or privilege under this Stipulation on the part of any Settling Party operate as a waiver thereof or of any other right, remedy, power, or privilege of such Settling Party under this Stipulation, or preclude further exercise thereof or the exercise of any other right, remedy, power, or privilege.

17.    The Settling Parties agree that nothing contained in this Stipulation shall cause any Settling Party to be the agent or legal representative of another Settling Party for any purpose

whatsoever, nor shall this Stipulation be deemed to create any form of business organization between the Settling Parties, nor is any Settling Party granted any right or authority to assume or create any obligation or responsibility on behalf of any other Settling Party, nor shall any Settling Party be in any way liable for any debt of another Settling Party as a result of this Stipulation except as explicitly set forth herein.

THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK

IN WITNESS WHEREOF, the Settling Parties hereto, intending to be legally bound hereby, have caused this Stipulation to be executed, by their duly authorized attorneys, as of the day and year first above written.

WOLF POPPER LLP

By: Robert C. Finkel
845 Third Avenue
New York, NY 10022
Tel: 212-759-4600
Fax: 212-486-2093

*Counsel for Lead Plaintiff*

PAUL HASTINGS LLP

By: William F. Sullivan
515 S. Flower Street, 25th Floor
Los Angeles, CA 90071
Tel: (213) 683-6000
Fax: (213) 996-3252

*Counsel for Defendant Kobe Steel, Ltd.*

38