**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| DANIEL AUDE, Individually and on Behalf of All Others Similarly Situated, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO. 17-CV-10085-VSB |
| vs. | ) |
| | ) |
| KOBE STEEL, LTD., HIROYA KAWASAKI, YOSHINORI ONOE, AKIRA KANEKO, AND NAOTO UMEHARA, | ) ) ) |
| | ) |
| Defendants. | ) |

_____

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**UNOPPOSED MOTION FOR ORDER PRELIMINARILY APPROVING**
**CLASS ACTION SETTLEMENT AND PROVIDING NOTICE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I.    PRELIMINARY STATEMENT ................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION ................... 3

III.  ARGUMENT ........................................................................................ 6

    A.    The Proposed Settlement Warrants Preliminary Approval ...................................... 6

    B.    The Settlement Occurred After Good Faith, Arm's-Length Negotiations Conducted By Well-Informed And Experienced Counsel ...................................... 8

    C.    The Settlement Falls Within the Range of What is Fair, Reasonable and Adequate ................................................................................... 9

        1.    The Complexity, Expense and Likely Duration of the Litigation ........... 10

        2.    The Reaction of the Class to the Settlement .............................................. 11

        3.    The Stage of the Proceedings ................................................................... 11

        4.    The Risk of Establishing Liability and Damages ..................................... 12

        5.    The Risks of Maintaining the Class Action Through Trial ...................... 13

        6.    The Ability of Defendants to Withstand a Greater Judgment .................. 13

        7.    The Reasonable of the Settlement in Light of the Best Possible Recovery and Attendant Risks of Litigation .............................................. 14

    D.    The Settlement Class Should Be Certified ............................................................ 14

        a.    The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied ............. 16

            i.    Numerosity ......................................................................... 16

            ii.   Commonality ...................................................................... 16

            iii.  Typicality ........................................................................... 17

            iv.   Adequacy of Representation .............................................. 18

        b.    The Requirements of Rule 23(b)(3) Are Satisfied ........................ 19

            i.    Common Questions Predominate ...................................... 19

            ii    A Class Action is Superior to Other Methods of Adjudication ....................................................................... 20

    E.    The Court Should Appoint Lead Counsel as Counsel For the Class ................... 21

    F.    The Proposed Notice to the Class Satisfies Rule 23 and Due Process Requirements ............................................................................... 22

        a.    The Mechanics of the Proposed Notice Program ......................... 22

b.     The Scope of the Notice Program Is Adequate............................ 23

c.     The Proposed Form of Notice Comports With the Requirements of Due Process, the PSLRA and FRCP 23........................................ 24

G.     Proposed Timeline of Events ............................................................... 25

CONCLUSION.................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Advanced Battery Techs. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .................................................................................... 22

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) .......................... 14

*Amchem Product, Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................... 16, 19, 20

*AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) .................................................. 12

*In re Ashanti Goldfields Sec. Litig.*,
2004 U.S. Dist. LEXIS 5165 (E.D.N.Y. Mar. 30, 2004) .................................................. 15

*In re Blech Sec. Litig.*,
187 F.R.D. 97 (S.D.N.Y. 1999) ....................................................................................... 21

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010) ............................................................................................ 17

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ............................................................................................ 16

*In re Citigroup Inc.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ....................................................................................... 7

*Clark v. Ecolab, Inc.*,
2009 WL 6615729  (S.D.N.Y. Nov. 27, 2009) .................................................................. 7

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) .............................................................................................. 16

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .............................................................................................. 9

*DiMuro v. Clinique Labs, LLC*,
572 F. App'x. 27 (2d Cir. 1974) ...................................................................................... 18

*In re First Commodity Corp. of Boston Customer Accounts Litig.*,
119 F.R.D. 301  (D. Mass. 1987) ..................................................................................... 20

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)...................................................................... 13

*In re Frontier Ins. Group Sec. Litig.*,
    172 F.R.D. 31 (E.D.N.Y. 1997) ........................................................................ 17

*Gerber v. Computer Assocs. Int'l*,
    1995 U.S. Dist. LEXIS 21142 (E.D.N.Y. Apr. 7, 1995) ............................ 16, 18

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ...................................................................... 15

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................... 12, 14, 24

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................... 15

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003)................................. 13

*In re Initial Pub. Offering Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006)............................................................................... 15

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ........................................................................ 7

*In re Interpublic Sec. Litig.*,
    2003 U.S. Dist. LEXIS 19784 (S.D.N.Y. Nov. 7, 2003)................................. 17

*Janus Capital Group, Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)......................................................................................... 10

*Korn v. Franchard Corp.*,
    456 F.2d 1206, 1209 (2d Cir. 1972).................................................................. 15

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    2007 U.S. Dist. LEXIS 9450  (S.D.N.Y. Feb. 1, 2007)............................... 23, 24

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247  (2d Cir. 2002)........................................................................... 19

*Morrison v. Nat'l Australia Bank*,
    561 U.S. 247 (2010)........................................................................................... 1

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950).......................................................................................... 22

iv

*In re Nasdaq Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ...................................................................... 7

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................... 8

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ......................................................................... 14

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    191 F.R.D. 369 (S.D.N.Y. 2000) .................................................................. 17

*In re Platinum & Palladium Commodities Litig.*,
    2014 WL 3500655 (S.D.N.Y. July 15, 2014) ................................................ 9

*Sczesny Trust v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004) .................................................................. 18

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011) ......................................................................... 17

*In re Stock Exchs. Options Trading Antitrust Litig.*,
    2006 U.S. Dist. LEXIS 87825  (S.D.N.Y. Dec. 4, 2006) ............................. 24

*Strougo v. Bassini*,
    258 F.Supp.2d 254 (S.D.N.Y. 2003) ............................................................ 11

*Tart v. Lions Gate Entm't Corp.*,
    2015 U.S. Dist. LEXIS 139266 (S.D.N.Y. Oct. 13, 2015) ........................... 18

*Thomas v. NCO Fin. Sys.*,
    2004 U.S. Dist. LEXIS 5405 (E.D. Pa. Mar. 31, 2004) ................................ 23

*In re United Health Group Inc. PSLRA Litig.*,
    643 F. Supp. 2d 1094 (D. Minn. 2009) ......................................................... 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ....................................................................... 7, 8

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
    2015 U.S. Dist. LEXIS 73276 (E.D.N.Y. Apr. 17, 2015) ............................. 24

*Weigner v. New York*,
    852 F.2d 646 (2d Cir. 1988) ......................................................................... 24

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ..................................................................... 15, 22

*Yuzary v. HSBC Bank USA, N.A,*
    2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013)................................................................... 7

**Other Authorities**

5 James Wm. Moore, MOORE'S FEDERAL PRACTICE, 23.83[1], at 23-336.2 to 23-339
    (3d ed. 2001) ....................................................................................................................... 9

**Rules and Statutes**

Fed. R. Civ. P. 23(a) ............................................................................................ *passim*

Fed. R. Civ. P. 23(b) ............................................................................................ *passim*

Fed. R. Civ. P. 23(e) ............................................................................................... 6, 22

Fed. R. Civ. P. 23(g) ................................................................................................... 21

Lead Plaintiff[1], on behalf of himself and all Settlement Class Members, respectfully submits this memorandum in support of his unopposed motion for an order (i) preliminarily approving the proposed Settlement of this Action as embodied in the Stipulation; (ii) preliminarily certifying the Settlement Class for purposes of effectuating the Settlement, preliminarily certifying Lead Plaintiff as class representative, and appointing Lead Counsel as class counsel for purposes of the Settlement; (iii) approving the form, content and manner of providing notice of the Settlement to the Settlement Class; (iv) authorizing the mailing and publication of such notice; and (v) scheduling a hearing to consider final approval of the Settlement and other related matters ("Settlement Hearing").

## I.    <u>PRELIMINARY STATEMENT</u>

This Action was initially filed on December 26, 2017 by Aude on behalf of himself and a proposed class of all persons who acquired the publicly traded ADRs of Kobe Steel, Ltd. ("Kobe") on the open market in the United States, between May 29, 2013 and October 12, 2017, inclusive. Lead Plaintiff and Kobe have reached an agreement to settle this Action after the parties engaged in extensive arm's length settlement negotiations. As set forth below, the proposed Settlement is based on a thorough understanding of the facts and the law, and provides for a significant and efficient recovery for the Settlement Class Members.

The Action on the merits concerned Kobe's misrepresentations and omissions with respect to a course of conduct extending over many years to sell customers products that had not met industry and customer-specific standards. Although Lead Plaintiff considered the case to be very strong on the merits, only a limited number of Kobe securities traded in the U.S. so liability was constrained by *Morrison v. Nat'l Australia Bank*, 561 U.S. 247 (2010).

---

[1] Unless otherwise stated, all capitalized terms have the same meaning as in the Stipulation.

After filing the initial complaint, Lead Plaintiff obtained information from Kobe that showed that only approximately 700,000 Kobe ADRs were outstanding and tradeable as of October 6, 2017.  The investigation also showed that only 295,000 Kobe ordinary shares traded on U.S. exchanges over the four and one-half year class period.  Due to the relatively limited number of ADRs and ordinary shares affected during the extended class period, and the movement of the prices of the ADRs and ordinary shares, Lead Plaintiff and Lead Counsel estimated that a maximum total recovery in this Action would be approximately $1 million – assuming all issued and outstanding ADRs, and ordinary shares in existence and/or traded during the extended class period were damaged by Kobe's conduct, and that all aspects of liability in this securities class action under the PSLRA, with its strict pleading requirements, were surmounted and proved, and the class was fully certified.

Under these circumstances, the Settlement Amount of $500,000 in cash (approximately 50% of maximum recoverable damages under the most optimistic scenario), which will be received *now* by Settlement Class Members (versus some uncertain date in the future, if ever), represents a laudable recovery for them, and avoids the further delay, uncertainty and expense of further litigation, which would have substantially limited (if any) upside.[2]

In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed Settlement is within the range of what is fair, reasonable and adequate so

---

[2] Lead Plaintiff had deferred serving the Individual Defendants (defined below) in Japan under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, until after he filed the amended complaint, and accordingly, the Individual Defendants have not been served with a summons and complaint in the Action.  Lead Plaintiff had further determined in preparing the amended complaint that whether the Individual Defendants were named in the amended complaint would not increase the overall exposure of the Defendants as a whole, and that certain of the initially-named Individual Defendants may not have liability either as primary or control person defendants.  Because the Individual Defendants were not served and are thus not subject to the Court's jurisdiction, Kobe is the only Settling Defendant.

that notice of the proposed Settlement can be given to the Settlement Class and a hearing can be scheduled to consider final settlement approval.  The Settlement clearly meets this criterion.

Lead Plaintiff respectfully requests that the Court enter the [Proposed] Order Preliminarily Approving Settlement and Providing Notice ("[Proposed] Preliminary Approval Order"), attached as Exhibit A to the Stipulation, which is being filed concurrently herewith.

## II.   FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION

Plaintiff commenced this Action on December 26, 2017 with the filing of a complaint ("Complaint") asserting violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder, against Kobe and Hiroya Kawasaki, Yoshinori Onoe, Akira Kaneko and Naoto Umehara (the "Individual Defendants"), on behalf of all persons who purchased or otherwise acquired the publicly traded ADRs of Kobe on the open market in the United States, between May 29, 2013 and October 12, 2017, inclusive.  That same day, pursuant to the PSLRA, Plaintiff's counsel published a notice of the filing over *Globe Newswire*.

The Complaint alleges that Defendants violated the federal securities laws by making materially false and misleading statements and omissions regarding, among other things, the quality of Kobe's products and integrity of its operations, and failing to disclose that Kobe had falsified data on many of Kobe's products including its aluminum, copper and steel products; and sold products that failed quality control tests in violation of applicable laws and regulations.

The truth was revealed to the investing public beginning October 8, 2017.  On October 18, 2017, Kobe ADRs fell $0.17 per ADR or over 4% after Kobe revealed that its U.S. unit had received an inquiry from the U.S. Department of Justice which, among other things, requested, "the production of documents related to non-conformity with the specification of products sold by the Company, the U.S. subsidiary or our affiliated companies to U.S. customers."

ADRs of Kobe fell $0.23 per ADR or 4.8% on November 15, 2017 after Kobe disclosed that the Japan Quality Assurance Organization had cancelled the Japan Industrial Standardization certification of a product at its subsidiary Kobelco & Materials Copper Tube Co., Ltd.

On March 7, 2018, Kobe ADRs declined by $0.44 per ADR or 8.3% after Kobe issued a highly anticipated report entitled, "Report on Misconduct in Kobe Steel Group" ("March 2018 Report") on March 6, 2018, before the U.S. market open.  The March 2018 Report concluded that Kobe had found that 163 additional customers had received nonconforming products, on top of the initial estimate of 525 customers revealed on October 26, 2017.  The report also revealed that the data falsification scheme had been going on for nearly five decades, and involved nineteen Kobe related companies or subsidiaries.  Also, Kobe announced the resignations of Kawasaki and Kaneko; and the firing of two managing executive officers.

On April 4, 2018, the Court appointed Aude as Lead Plaintiff and approved Lead Plaintiff's selection of Wolf Popper LLP as lead counsel ("Lead Counsel").  Thereafter, Lead Counsel undertook a thorough investigation of the claims and facts in this case, and obtained a detailed understanding of the strengths and weaknesses of the factual allegations, claims and the damages suffered by the Class, and prepared a detail draft amended complaint.  This investigation included: a review of the Kobe's corporate documents including its Corporate Code of Ethics, business plans, group profiles, press releases, annual reports, financial statements, "Report On Investigation Into the Causes of the Kobe Steel Group's Improper Conducts and On Measures To Prevent Recurrence" dated November 10, 2017, and "Report on the Kobe Group's Misconduct" dated March 6, 2018; a thorough review of myriad news articles and analyst reports; a review of Kobe's corporate website; a review of Japan's Companies Act; and other factual and legal research in preparation for the amended complaint.

As part of their thorough investigation, Lead Counsel requested and obtained from Kobe information concerning the number of Kobe ADRs that were outstanding during the Class Period. The investigation showed that only approximately 700,000 Kobe ADRs were outstanding and tradeable as of October 6, 2017. Given the above subsequent revelations and price declines of Kobe's ADRs, Lead Plaintiff determined to extend the class period to the present Settlement Class Period ending date of March 5, 2018; but, the number of issued and outstanding ADRs would not be materially affected. The investigation also showed that only 295,000 Kobe ordinary shares traded over-the-counter in the U.S. during the extended class period. Due to the relatively limited number of ADRs and ordinary shares affected during the extended class period, and the movement of the prices of the ADRs and ordinary shares, Lead Plaintiff and Lead Counsel estimated that a maximum total recovery in this Action would be approximately $1 million – assuming all issued and outstanding ADRs, and ordinary shares in existence and/or traded during the extended class period were damaged by Kobe's conduct, and that all aspects of liability in this securities class action under the PSLRA, with its strict pleading requirements, were shown and proved, and the class was fully certified.

Considering the foregoing, Lead Plaintiff and Lead Counsel consulted with a damages expert and determined that it was in the interest of Lead Plaintiff and the putative Class that the Settling Parties engage in settlement negotiations.

From May 2018 through August 2018, counsel engaged in arm's-length negotiations, which included discussions of the merits of the claims as well as the maximum damages that could be achieved from continued litigation in the event Lead Plaintiff was completely successful in proving all his claims. During the course of settlement discussions, Lead Plaintiff advised Kobe that he intended to extend the class period through March 5, 2018, and would

include in the class ordinary shares traded on the open market in the U.S.  These arm's-length negotiations resulted in the deferral of the filing of the amended complaint.  On August 21, 2018, the Parties filed a stipulation notifying the Court that on August 10, 2018, they had reached an agreement in principle to resolve their dispute pursuant to a class-wide settlement.

The agreement resolves all claims in this Litigation as to all Defendants.  The Settlement provides a benefit to the Settlement Class in the amount of $500,000 in cash.

Over the next month, Lead Plaintiff and Kobe negotiated the Stipulation (and the exhibits thereto), setting forth the final and binding agreement to settle the Action.  Lead Plaintiff also worked with Kobe and a damages expert to develop the Plan of Allocation.  The Settling Parties then drafted and negotiated the terms of the Stipulation and supporting exhibits, which were executed on September 21, 2018.

The Settlement was based on a thorough investigation of the claims and the underlying events alleged in the Action, and the applicable law with respect to the claims of the Lead Plaintiff against Defendants and their potential defenses.  The Stipulation provides an all-cash benefit for the Class and eliminates the substantial risk that continued litigation may result in a smaller or possibly no recovery at all.

Lead Plaintiff and Lead Counsel submit that the proposed Settlement is sufficiently within the range of possible approval to warrant this motion for preliminary approval.

## III.   ARGUMENT

### A.  <u>The Proposed Settlement Warrants Preliminary Approval</u>

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the court for approval, and the settlement should be approved if the court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see In re Citigroup Inc.*, 296

F.R.D. 147, 154 (S.D.N.Y. 2013).  Public policy favors settlement of class action litigation. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'") (citation omitted).

Judicial review of a proposed class action settlement consists of a two-step process: preliminary approval, followed by the distribution of notice to the class, and final approval.  *See Yuzary v. HSBC Bank USA, N.A*, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013) (Preliminary approval "simply allows notice to issue to the class and for class members to object to or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input.").  "Preliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties."  *Clark v. Ecolab, Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009).  The primary question raised by a request for preliminary approval is whether there is "probable cause to submit the settlement to class members and hold a full-scale hearing as to its fairness."  *Id.*

"Where the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."  *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005) (quoting *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).

As shown below, the proposed Settlement is both procedurally and substantively fair, and therefore fully merits this Court's preliminary approval.

**B.   The Settlement Occurred After Good Faith, Arm's-Length Negotiations Conducted By Well-Informed And Experienced Counsel**

Here, the proposed Settlement was achieved after several months of investigation, analyses and arm's-length negotiations between counsel for the Settling Parties.   These negotiations were initiated a couple of months after Kobe released its March 2018 Report.   The fact that the Settlement was reached after several months of discussions about the potential damages and the merits, and through arm's-length negotiations between experienced and well-informed counsel, strongly supports the conclusion that the Settlement is fair.   A settlement may be presumed to be fair, where it was "reached in arm's-length negotiations between experienced, capable counsel."   *Wal-Mart*, 396 F.3d at 116.

Lead Plaintiff supervised this litigation and was provided regular updates with the status of the Action from Lead Counsel.   Lead Plaintiff authorized Lead Counsel to negotiate with Kobe, and was provided regular updates with the status of the settlement negotiations with Kobe. Lead Plaintiff approved the proposed Settlement and authorized Lead Counsel to settle the Action with Kobe for the proposed Settlement.   Lead Counsel, which has extensive experience in prosecuting securities class actions in this District and around the country, has also concluded that the Settlement is in the best interests of the Settlement Class.   *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts have consistently given "'great weight' … to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

The fact that the proposed Settlement is the product of arm's-length negotiations, was approved by the Lead Plaintiff and was entered into by experienced and informed counsel, demonstrates that the processes by which it was reached is procedurally fair.   It is, therefore, presumptively fair, reasonable and adequate. *See Wal-Mart*, 396 F.3d at 116 ("presumption of

fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel").

### C.   The Settlement Falls Within the Range of What is Fair, Reasonable and Adequate

Preliminary approval of a settlement does not require that the Court make a final determination regarding the fairness, reasonableness and adequacy of the Settlement; that decision is made at the final approval stage, after notice of the settlement is provided to class members and they have had an opportunity to voice their views or to exclude themselves from the settlement. *See* 5 James Wm. Moore, MOORE'S FEDERAL PRACTICE, 23.83[1], at 23-336.2 to 23-339 (3d ed. 2001).  Nevertheless, a preliminary review of the factors evaluated for final approval of the Settlement supports preliminary approval here.

The Second Circuit has identified nine factors that courts should consider in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted).  A preliminary analysis of these factors supports preliminary approval.  *See In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014) ("At preliminary approval, it is not necessary to exhaustively consider the factors applicable to final approval.").

### 1. **The Complexity, Expense and Likely Duration of the Litigation**

This case involves a number of unique issues that make it particularly complex—and particularly susceptible to appellate review—even for securities class actions.  Among other things, the scheme was conducted by officers at Kobe's operating companies, whereas public statements to investors were made by officers at corporate headquarters.  These facts presented knotty issues of who were the makers of the false statements under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), and whether the corporation itself has acted with scienter when the individual speakers lacked scienter.  Lead Plaintiff considered Kobe's public reports on the scheme credible and those reports did not accuse Kobe's most senior officers of actual knowledge of the scheme.

The outcome of any motion to dismiss would affect the nature of the case that Lead Plaintiff would litigate.  If the motion was granted, Lead Plaintiff would have appealed the ruling, resulting in further expense of time and resources.  If the motion was denied, a substantial amount of work would need to be done immediately, including the production and analysis of vast quantities of relevant documents, depositions, interrogatories, and third party discovery. Most of the documents would be in Japanese, and most or all of the witnesses would be in Japan, where Kobe is headquartered.  Even service of process would be a complicated and expensive proposition.  Depositions would likely be in Japan, through translators, and the fact that some of the alleged conduct purportedly took place over five decades also complicated the discovery and fact-establishing process.  This would likely be followed with the completion of expert discovery, briefing on motions for summary judgment, designation of witnesses and exhibits, preparation of pre-trial memoranda and proposed findings of fact and conclusions of law, presentation of witnesses and evidence at trial, and, depending on the trial court's ruling on the

merits, briefing of the losing party's almost-certain appeal.  If the case proceeded to trial, it would be very complicated for jurors, and very expensive for the Class.

It is reasonable to assume that the Defendants would continue their vigorous defense of this case throughout fact and expert discovery, summary judgment, trial and appeal phases of this case.  The proposed Settlement obviates the need for the Court to rule on a motion to dismiss, and the numerous discovery and dispositive motions that would likely follow, and the expenses and uncertainties of discovery – and is an eminently reasonable and beneficial result especially in light of the limitations on recovery due to the relatively small number of damaged shares in this case.  Moreover, the proposed Settlement, if approved, ensures and advances the recovery to the Class, possibly by as much as three years or more.  *See Strougo v. Bassini*, 258 F.Supp.2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation…the passage of time would introduce yet more risks…and would, in light of the time and value of money, make future recoveries less valuable than this current recovery") (citation omitted).  Thus, this factor speaks strongly in favor of the preliminary approval of the proposed Settlement.

### 2.   The Reaction of the Class to the Settlement

Because the Court has not yet preliminarily approved the Settlement, Notice has not yet been distributed to the Class and therefore the reaction of class members cannot be evaluated at this stage.  Should any objections be received after the notice is disseminated, they will be addressed by counsel in connection with their motion for final approval of the Settlement.

### 3.   The Stage of the Proceedings

The volume and substance of Lead Plaintiff's knowledge of the merits and potential weaknesses of the Settlement Class's claims are more than adequate to support the Settlement.

This knowledge is based on Lead Plaintiff's extensive investigation, and permitted Lead Plaintiff to be well-informed about the strengths and weaknesses of this case and to engage in effective settlement discussions.  Although this Action is being resolved prior to the motion to dismiss, Lead Plaintiff had the benefit of analyzing multiple investigative reports completed about the alleged wrongdoing at Kobe, as well as countless news reports.  Lead Counsel had prepared and were ready to file an amended complaint well over a hundred pages in length.  Lead Plaintiff also obtained data concerning trading in Kobe ADRs and ordinary shares during the class period, which was critical in understanding the potential damage parameters and informed the decision to resolve this Action.  By the time the parties entered into an agreement to settle, Lead Counsel was extremely knowledgeable of the issues and able to recommend the proposed Settlement to Lead Plaintiff.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("the question is whether the parties had adequate information about their claims").

### 4.   The Risk of Establishing Liability and Damages

The proposed Settlement adequately reflects the value of Lead Plaintiff's case.  Lead Counsel has expended substantial amounts of time and money researching the allegations against Defendants and prosecuting this case, and is confident of ultimate success in this matter. Nevertheless, there is risk in any litigation, particularly so in a securities class action, which involves a notoriously complex area of the law.  *See AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 U.S. Dist. LEXIS 17588, at *39 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation").  Therefore, any prediction of success is far from certain.

For example, Lead Plaintiff is well aware of the complexity of establishing scienter and damages in securities class actions.  If Defendants were successful in convincing the Court in

these areas of the law, the case would be over, with no recovery for the Class.  *See In re Indep.*

*Energy Holdings PLC Sec. Litig.*, 2003 U.S. Dist. LEXIS 17090, at *11-12 (S.D.N.Y. Sept. 29,

2003) (noting difficulty of proving damages in securities cases).  Moreover, Lead Plaintiff would

have to show that Defendants made statements that were materially misleading, or were under a

duty to disclose, which was far from certain here.  In order to prevail, Lead Plaintiff would be

required to prove that Defendants' alleged false and misleading statements inflated the price of

Kobe ADRs and ordinary shares, and the amount of the artificial inflation.  Lead Counsel, with

the assistance of a damages expert, have preliminarily calculated the damages attributable to

Defendants' alleged wrongdoing.  However, this figure assumes every element of the Class's

damages theory is accepted by the jury as being correct and recoverable.  These risks, when

balanced against the immediate benefits of this Settlement, favor a finding that the Settlement is

well within the range of reasonableness.

### 5.   The Risks of Maintaining the Class Action Through Trial

While Lead Plaintiff believes that the Court would certify the Class, certification can be

reviewed and modified at any time before trial.  Thus, there is always a risk that the Action, or

particular claims, might not be maintained as a class through trial.  *See Frank v. Eastman Kodak*

*Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail

[on motion for class certification], the risk that the case might not be certified is not illusory").

Accordingly, the risks of maintaining the class through trial weigh in favor of this Settlement.

### 6.   The Ability of Defendants to Withstand a Greater Judgment

Kobe's ability to pay more is undisputed.  However, the Settlement of $500,000 is a

substantial amount and represents 50% of the maximum damages estimate of Lead Plaintiff's

damages expert.  Even if Kobe could possibly pay more, "'this fact, standing alone does not

render the settlement inadequate.'" *In re United Health Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1099 (D. Minn. 2009) (citation omitted).  The Settling Parties agreed that it was both prudent and economically sound to settle at this stage and not expend additional time, money, and other resources on this litigation.  By settling the case now, Kobe is able to put the Litigation behind it and move forward and Lead Plaintiff is able to recover a large percentage of maximum class-wide damages without risking years of litigation and the potential for no ultimate recovery.

### 7. <u>The Reasonable of the Settlement in Light of the Best Possible Recovery and Attendant Risks of Litigation</u>

This factor weighs heavily in support of Settlement.  Although Lead Plaintiff and Kobe disagree as to the amount of maximum recoverable damages by the Class, the $500,000 settlement fund is a substantial recovery even under a highly optimistic scenario for plaintiffs, regardless of which party's damages metric is used.  Nevertheless, the adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the proposed Settlement falls within a "range of reasonableness," a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)*; see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery").

### D. <u>The Settlement Class Should Be Certified</u>

Lead Plaintiff further requests that the Court certify a Settlement Class for settlement purposes only which will consist of:

all persons or entities who purchased or otherwise acquired American Depository Receipts or ordinary shares of Kobe Steel, Ltd. on the open market in the United States during the period from May 29, 2013 through and including March 5, 2018, and were allegedly damaged thereby.

Stipulation at ¶ 22.  Excluded from the Settlement Class definition are the Defendants, members of their immediate families and their legal representatives, heirs, successors or assigns, current or former officers of Kobe, and any entity in which any Defendant or excluded person has or had a controlling interest.  Also excluded from the Class definition are those persons who file valid and timely requests for exclusion from the Settlement Class pursuant to the Notice.  *Id.*

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).  Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 186 (S.D.N.Y. 2012) (quoting *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 158 (S.D.N.Y. 2011)).

Certification of the Class for settlement purposes only will further the interests of Class Members and Defendants by allowing this Litigation to be settled on a class-wide basis. Moreover, for purposes of settlement only, Defendants consent to certification of the Class under Fed. R. Civ. P. 23(a)(1)-(4) and 23(b)(3).  "[A] district judge may certify a class only after making a determination that each of the Rule 23 requirements has been met…." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).  In making those determinations, the Second Circuit has instructed courts to be "mindful of the admonition of liberality toward demands for class suit status in securities litigation." *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972).  *See also In re Ashanti Goldfields Sec. Litig.*, 2004 U.S. Dist. LEXIS 5165, at *32 (E.D.N.Y. Mar. 30, 2004) ("A liberal standard is in accord with the Second Circuit's preference

for the use of class actions in securities law claims.") (citation omitted).  Pursuant to Fed. R. Civ. P 23(a), class certification is appropriate here because the four prerequisites (numerosity, commonality, typicality and adequacy of representation) are met.  *See Amchem Product, Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  Second, Class certification is appropriate because, pursuant to Fed. R. Civ. P. 23(b)(3), this Litigation involves common issues of law or fact that predominate over individual issues such that the class action is superior to fairly and efficiently adjudicate the Class Members' claims.

### a.  The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied

#### i.  Numerosity

The first requirement of Rule 23(a) is that plaintiff must show that "the class is so numerous that joinder of all members is impractible."  *See* Fed. R. Civ. P. 23(a)(1).  Rule 23 does not require joinder to be impossible, but the "difficulty or inconvenience of joining all members of the class [must] make [the] use of the class action appropriate."  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007).  Numerosity is presumed when a class consists of forty or more members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

#### ii.  Commonality

Second, Lead Plaintiff must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Proof of Lead Plaintiff's claims is necessarily common to all members of the Settlement Class.  Indeed, in determining whether common questions exist, Rule 23(a)(2) "requires only that there be 'a common nucleus of operative fact,' not that there be an absolute identity of facts."  *Gerber v. Computer Assocs. Int'l*, 1995 U.S. Dist. LEXIS 21142, at *7-8 (E.D.N.Y. Apr. 7, 1995) (citation omitted).  *See also In re Oxford Health Plans, Inc. Sec.*

*Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where, as here, there exists a common nucleus of operative facts affecting all members, common questions unquestionably prevail."). Common questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in written publications and press releases circulated to the investing public and the media. *See e.g., In re Frontier Ins. Group Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997) (disseminating statements that omitted or misrepresented material facts deemed common questions). The claims therefore arise out of the same facts and rely on the same legal principles, and are the sort that courts routinely hold to satisfy the "common question" requirement. *See e.g., In re Interpublic Sec. Litig.*, 2003 U.S. Dist. LEXIS 19784, at *7-8 (S.D.N.Y. Nov. 7, 2003) ("Plaintiffs have raised a number of common issues of law and fact. Among them are whether [defendants'] public filings and press releases, and whether the damages to the investors were caused by the defendants' misstatements."). Thus, the commonality requirement is met.

### iii.  **Typicality**

Rule 23(a) also requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "[t]ypicality requirement is satisfied when each class member's claim arises from the same courts of events and each class member makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011). "The commonality and typicality requirements often 'tend to merge into one another, so that similar considerations animate analysis' of both." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (citation omitted). To meet typicality, "[t]he claims need not be identical, but must derive

17

from 'the same general, over-all course of fraudulent conduct.'" *Gerber*, 1995 U.S. Dist. LEXIS 21142, at *8-9 (citation omitted).

Here, Lead Plaintiff's claims and the claims of the putative Settlement Class Members arise from the same conduct.  All members of the Settlement Class seek to prove with the same evidence that Defendants made materially false and misleading statements during the Settlement Class Period and failed to disclose material adverse facts.  Lead Plaintiff is not subject to any unique defenses that could make him atypical of class members.  Therefore, the typicality requirement is met.

### iv.   Adequacy of Representation

Lastly, Rule 23(a) requires that Lead Plaintiff shows that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).  This requires a two part showing that: (1) the class representatives have common interests with the members of the class; and (2) the class representatives will vigorously prosecute the interests of the class through qualified counsel.  *See Tart v. Lions Gate Entm't Corp.*, 2015 U.S. Dist. LEXIS 139266, at *7 (S.D.N.Y. Oct. 13, 2015) (citation omitted).

Lead Plaintiff satisfies both prongs of the adequacy test.  First, Lead Plaintiff's interests are not antagonistic to those of the Settlement Class, as all members of the Class allege claims arising from the same wrongful conduct based on the same legal theories.[3]  Moreover, the damages they seek arise from the purchase or acquisition of Kobe ADRs or ordinary shares at

---

[3] Because Defendants' alleged wrongful conduct similarly affected both Class members who purchased Kobe ADRs and ordinary shares, Lead Plaintiff adequately represents purchasers and acquirers of ADRs and ordinary shares alike.  *See, e.g., DiMuro v. Clinique Labs, LLC*, 572 F. App'x. 27, 29 (2d Cir. 1974) ("[P]laintiffs who … purchased certain securities ha[ve] class standing to assert claims on behalf of purchasers of other related securities where the allegedly fraudulent conduct was a 'nearly identical misrepresentation."); *Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 325 (S.D.N.Y. 2004) ("the interests of Polaroid option investors and shareholders are no sufficiently differentiated to require the appointment of a 'niche' lead plaintiff….") (citation omitted).

prices allegedly artificially inflated as a result of Defendants' false and misleading statements, and the subsequent removal of such artificial inflation when the alleged wrongdoing was revealed.  Second, Lead Plaintiff's Counsel are highly qualified and have substantial experience in securities class actions and other complex litigation.   Therefore both aspects of the requirement of adequacy of representation are met.

### b.   The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The proposed Settlement Class satisfies these requirements.

### i.   Common Questions Predominate

The predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement."  *Amchem.*, 521 U.S. at 623.  In determining whether common questions predominate, the inquiry should be directed primarily toward whether the issue of liability is common to members of the class. Indeed, "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (citation omitted).

Lead Plaintiff submits that there are no predominant individual issues in this case, especially in the settlement context.  *In re First Commodity Corp. of Boston Customer Accounts*

*Litig.*, 119 F.R.D. 301, 307 (D. Mass. 1987) ("although common questions may predominate and justify a class if the case is settled, the standards of Rule 23(b)(3) may not be met if the case must be tried.").   In *Amchem*, the Supreme Court noted that because a settlement class action obviates a trial, the district judge deciding whether to certify a settlement class action "need not inquire whether the case, if tried, would present intractable management problems," under Fed. R. Civ. P. 23(b)(3).   521 U.S. at 620.   The Supreme Court also noted that predominance is "a test readily met in certain cases alleging consumer or securities fraud." *Id.* at 625.

As discussed above with regard to commonality, the nature of this case and the elements of Lead Plaintiff's claims and the claims of the putative Settlement Class Members involve the same alleged misleading statements and omissions by Defendants, such that common questions predominate over individualized questions.   Once common questions of liability are resolved, all that remains is the clerical task of computing the amount of damages suffered by each Class Member.   Thus, common questions predominate and certification is appropriate.

### ii.   A Class Action is Superior to Other Methods of Adjudication

Fed. R. Civ. P. 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

Here, the utility of presenting the claims asserted through the class action method is substantial, as members of the Settlement Class who have been injured could number in the thousands, but few, if any, have been damaged to a degree that would induce them to litigate

their claims on their own.  The alternative would be, potentially, to unleash hundreds of individual actions into the judicial system or risk that Lead Plaintiff and Settlement Class Members would be unable to seek redress due to the costs of litigation.  *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) (superiority requirement satisfied as "[m]ultiple lawsuits would be costly and inefficient").  Further, resolution of this Litigation as a class action provides benefits for Kobe which could not otherwise obtain a class-wide release and, therefore, would have little incentive to enter into the current Settlement.  Certification of the Class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.  Therefore, resolution of the Litigation as a class action is clearly superior to any other available method of resolution.

For the foregoing reasons, this Settlement Class meets the requirements of both Fed. R. Civ. P. 23(a) and 23(b) and the Court should certify the Class for settlement purposes.

### E.  <u>The Court Should Appoint Lead Counsel as Counsel For the Class</u>

A court that certifies a class must also appoint class counsel.  Fed. R. Civ. P. 23(g)(1)(A) directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class."

Wolf Popper has done considerable work in this matter.  Lead Plaintiff and Lead Counsel filed a detailed securities class action Complaint on December 26, 2017.  Wolf Popper was appointed Lead Counsel by order dated April 4, 2018.  Since that appointment, Wolf Popper has continued to devote substantial time, effort and resources to investigate this Action, and prepared a detailed amended complaint.  At the same time, Wolf Popper devoted substantial time in

arm's-length negotiations with Kobe where the negotiations produced this proposed Settlement for the Class.  They have negotiated the Settlement with Defendants' counsel on beneficial terms to the Class.  For these reasons, Lead Plaintiff respectfully requests that the Court appoint Wolf Popper to serve as Class Counsel.

### F.  The Proposed Notice to the Class Satisfies Rule 23 and Due Process Requirements

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.'" MANUAL FOR COMPLEX LITIGATION at § 21.312, at 414 (4th ed. 2004). In order to satisfy the due process requirements, notice to Class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citation omitted).  Notice should also provide a "very general description of the proposed settlement." *Weinberger*, 698 F. 2d at 70.

### a.  The Mechanics of the Proposed Notice Program

Lead Plaintiff proposes that notice be given in the form of a detailed postcard notice, attached as Exhibit A-1 to the [Proposed] Preliminary Approval Order (attached to the Stipulation as Exhibit A), which in turn directs Settlement Class Members to an even more detailed Notice of Proposed Class Action Settlement ("Notice"), Exhibit A-2 to the [Proposed] Preliminary Approval Order, and a Settlement website containing key documents. *See In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) (approving post card notice "to minimize costs.").  The proposed forms and methods of Class notice describes in basic terms the operation of the Settlement, the considerations that caused Class Counsel to conclude the Settlement is fair and adequate, the maximum counsel fees and class representative

compensation that may be sought, the procedure for objecting to the Settlement, and the date and place of the fairness hearing.

The Claims Administrator, A.B. Data, anticipates making an initial mailing to the Class Members to institutional investors, brokers, banks, and other financial institutions that A.B. Data believes may hold Kobe ADRs or ordinary shares in street name for Class Members.  Lead Plaintiff also proposes publishing a summary notice in the form attached to the Stipulation as Exhibit A-4, Summary Notice of Proposed Class Action Settlement, which provides an abbreviated but informative description of the Action and proposed Settlement, and explains how to obtain the more detailed Notice, and Proof of Claim and Release form, attached as Exhibit A-3 to the Proposed Preliminary Approval Order.  The Notice and Proof of Claim forms will also be posted on a settlement website hosted by A.B. Data.  The Summary Notice will be published once online over *PR Newswire*.[4]

### b.  <u>The Scope of the Notice Program Is Adequate</u>

The proposed forms of notice will fairly apprise Class members of the settlement and their options with respect thereto and fully satisfy due process requirements.  There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement.  Rather, when measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules, the court should look to the reasonableness of the notice program.  *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2007 U.S. Dist. LEXIS 9450, at *26 (S.D.N.Y. Feb. 1, 2007).  Courts within the Second Circuit have established that "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and

---

[4]  According to PR Newswire's website, every release includes distribution to a network of over 4,000 websites and databases available to the investment community.  *See* http://www.prnewswire.com/products/content-distribution/.  *See e.g.*, *Thomas v. NCO Fin. Sys.*, 2004 U.S. Dist. LEXIS 5405, *14 (E.D. Pa. Mar. 31, 2004) (publication notice using PR Newswire was "calculated to have ubiquitous reach.").

each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id*. at *27 (citing *Weigner v. New York*, 852 F.2d 646, 649 (2d Cir. 1988)). Indeed, courts have found notice such as that proposed by Lead Plaintiff adequate in numerous securities class action settlements. *See e.g.*, *Global Crossing*, 225 F.R.D. at 448-49 (individual notice to all reasonably locatable class members, publication in newspapers and on websites).

### c.  The Proposed Form of Notice Comports With the Requirements of Due Process, the PSLRA and FRCP 23

The content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, 2006 U.S. Dist. LEXIS 87825, at *22 (S.D.N.Y. Dec. 4, 2006) (citation omitted).  Specifically, with respect to cases filed under the PSLRA, notices of settlements must state: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable by plaintiffs if they prevailed at trial, a statement from each party concerning the issues on which the parties disagree"; (3) "[i]f attorney's fees or costs will be sought from the fund, a statement of who intends to apply for same and the amount that will be sought, including the amount of fees and costs on an average per share basis, as well as a brief explanation supporting the fees and costs sought"; (4) "[c]ontact information for one or more of counsel for the plaintiffs who would be available to answer questions from class members"; (5) "[a] brief explanation as to the reason for settlement"; and (6) "[o]ther information as required by the Court." *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, 2015 U.S. Dist. LEXIS 73276, at *24-25 (E.D.N.Y. Apr. 17, 2015) (citing 15 U.S.C. §78u-4(a)(7(A)-(F)).

The proposed notice contains all of the information required by the PSLRA. *See* Notice, Exhibit A-2 to the Stipulation. The information is provided in a format that is accessible to the reader and advises Settlement Class Members of their right to exclude themselves from or object to any aspect of the Settlement. Lead Plaintiff respectfully submits that the proposed form of Notice satisfies the PSLRA, Due Process, and FRCP 23, and should therefore be approved.

### G. **Proposed Timeline of Events**

Lead Plaintiff respectfully proposes the schedule set forth below:

| EVENT | PROPOSED DEADLINE |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members | 15 calendar days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice | 22 calendar days after entry of Preliminary Approval Order |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation and Lead Counsel's application for attorneys' fees and expenses. | 51 calendar days after entry of Preliminary Approval Order |
| Deadline for receipt of exclusion requests and objections | 80 calendar days after entry of Preliminary Approval Order |
| Settlement Hearing Date | 100 calendar days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Deadline for Class Members' submission of Proof of Claim and Release forms | 30 calendar days after Settlement Hearing |

### CONCLUSION

Based on the reasons discussed above, Lead Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the proposed settlement; (2) preliminarily certify the Class for settlement purposes; (3) approve and direct the Settling Parties to issue Notice to the Class; and (4) set a date and time for a Settlement Hearing.

Dated: September 24, 2018

New York, New York

Respectfully,


**WOLF POPPER LLP**

*/s/ Robert C. Finkel*
Robert C. Finkel
Andrew E. Lencyk
Fei-Lu Qian
845 Third Avenue, 12th Floor
New York, New York 10022
Tel: (212) 759-4600
Fax: (212) 486-2093
rfinkel@wolfpopper.com
alencyk@wolfpopper.com
fqian@wolfpopper.com

*Attorneys for Lead Plaintiff*